Arlo Garcia Uriarte, SBN 231764
Un Kei Wu, SBN 270058
Ernesto Sanchez, SBN 278006
LIBERATION LAW GROUP, P.C.
2760 Mission Street
San Mateo, CA 94110
Telephone: (415) 695-1000
Facsimile:  (415) 695-1006

Attorneys for PLAINTIFFS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Joseph Timbang Angeles, Noe Lastimosa, on behalf of themselves, and on behalf of others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>US Airways, Inc., and DOES 1 through 50,<br><br>Defendants. | Case No.: CV-12-05860 CRB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**<br><br>Date:  January 18, 2012<br>Time: 10:00 a.m.<br>Courtroom:  6, 17th Floor<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>HON. CHARLES R. BREYER |

PLAINTIFFS Joseph Timbang Angeles and Noe Lastimosa ("Plaintiffs"), hereby submit their response to Defendant US Airways, Inc.'s motion to dismiss under Fed. Rule of Civ. Proc. § 12(b)(1) and (6).

**TABLE OF CONTENTS**

RELEVANT STATEMENT OF FACTS ..... 3

CAUSES OF ACTION ..... 5

ARGUMENT ..... 7

   I. FEDERAL RULE OF CIVIL PROCEDURE REQUIRES SUMMARY JUDGMENT PROCEDURE IF MATTERS OUTSIDE THE PLEADING ARE TAKEN INTO CONSIDERATION. ..... 8

   II. PLAINTIFFS ASSERT OVERTIME RIGHTS THAT DO NOT REQUIRE INTERPRETATION OF THE CBA AND THAT ARE INDEPENDENT OF THE RAILWAY LABOR ACT. ..... 8

      A. CAL. LABOR CODE § 510 IS APPLICABLE HERE BECAUSE DEFENDANTS DO NOT MEET THE REQUIREMENTS OF LABOR CODE § 514. ..... 10

      B. DETERMINATION OF WHETHER AN OVERTIME VIOLATION EXIST DOES NOT NEED INTERPRETATION OF THE CBA WHEN THE EXERCISE INVOLVES ONLY COUNTING OF HOURS WORKED PER DAY OR PER WEEK. ..... 10

      C. BY HAVING A BLANKET PROHIBITION AGAINST OVERTIME ACQUIRED THROUGH SHIFT TRADES, THE CBA HAS BARGAINED AWAY NON-NEGOTIABLE STATE LAW RIGHTS. ..... 11

   III. PLAINTIFFS' MEAL AND REST BREAK CLAIMS ARE NOT PREDICATED ON THE INTERPRETATION OF THE CBA AND ADHERANCE TO CALIFORNIA LAW ON MEAL AND REST BREAK DOES NOT AFFECT SERVICES AS DEFINED BY THE ADA. ..... 13

      A. PLAINTIFFS' MEAL AND REST BREAK CLAIMS ARE CLEAR ON ITS FACE AND DO NOT REQUIRE INTERPRETATION. ..... 13

      B. APPLICATION OF CALIFORNIA MEAL AND REST BREAK REGULATION DOES NOT AFFECT SERVICES PROVIDED BY THESE PLAINTIFFS. ..... 13

   IV. OTHER CLAIMS ..... 14

**RELEVANT STATEMENT OF FACTS FROM THE FIRST AMENDED COMPLAINT**

This class action is brought under California Labor Code Sections 201-204, 226, 510, 1194, 226.7, 2802 and 512, California Business and Professions Code Section 17200, et seq., (Unfair Practices Act) and the applicable wage order issued by the Industrial Welfare Commission ("IWC") including IWC Wage Order No. 9 (2001).  *See First Amended Complaint (FAC) page 2, paragraph 1.*

The FAC "challenges systemic illegal employment practices" by Defendants resulting in unpaid wages, including overtime and meal and rest break compensation.   FAC, ¶¶ 2-3.

Plaintiffs Joseph Timbang Angeles and Noe Lastimosa were employed as a part-time and full-time ramp agents at San Francisco International Airport by Defendants.  Mr. Angeles has been laid off since June 2012, while Mr. Lastimosa is still employed by Defendants. *FAC ¶¶ 8-9.*

Defendant US Airways along with US Airways Shuttle and US Airways Express, operates flights and serves passengers in several airports in California, including San Francisco, San Jose, Oakland, Sacramento, Monterey, Fresno, Bakersfield, San Luis Obispo, Santa Barbara, Santa Ana, Palm Springs, Los Angeles and San Diego.  *FAC ¶ 18.*

Plaintiffs are designated as "Fleet Service Agents" and are required to clock in and clock out each work day. FAC ¶¶ 19.  Fleet Service Agents are assigned a schedule for morning (a.m.) shifts and afternoon/evening (p.m.) shifts.  Fleet Service Agents are allowed to 'pick-up shifts' from other Fleet Service Agents to pick-up shift mean to add shifts to pre-assigned daily schedules. By picking up shifts part-time and full-time Fleet Service Agents are able to increase the number of daily and weekly hours worked. FAC ¶ 20.

Fleet Service Agents, especially when working two or more shifts in one day, regularly work more than 8 hours in one day, more than 12 hours a day and more than 40 hours a week. FAC ¶¶ 21-23.  Defendants' pay Fleet Service Agents once every two weeks.  FAC ¶ 24.  Under California law for a two week pay period, the maximum number of regular hours is 80.  See Cal. Labor Code 510.  When examining Plaintiffs' pay checks it is apparent that they frequently work

more than 80 hours for a two week period but do not get overtime premium pay for all hours after 80.  *See Exhibit A to Declaration of Arlo Uriarte.*

Defendants when accounting for hours worked and overtime hours worked do not properly pay Fleet Service Agents pursuant to California overtime regulations.  FAC ¶ 25.

Defendants assign hours work into different categories resulting in the underpayment and inaccurate accounting of overtime hours worked during each two week pay period. FAC ¶ 27. The pay stub or itemized wage statements received by Fleet Service Agents do not accurately reflect which [OVERTIME] hours are worked and which hours are regular hours worked.  FAC ¶ 28.

Fleet Service Agents are not required to clock in and clock out during meal periods.  *FAC ¶ 29.*  Fleet Service Agents were subject to a uniform policy and practice wherein these employees were only allowed to take meal periods and rest periods when there are no flights that need to be serviced.  Often, changes in flight schedules, under staffing, and other factors causes Fleet Service Agents to involuntarily engage in improper/on-duty meal periods and rest breaks or results in Fleet Service Agents missing meal period and rest breaks entirely.

Defendants do not schedule meal periods and rest breaks.  *FAC ¶¶31-32.* Defendants' uniform practice and policy is to not allow its Fleet Service Agents to leave the employment premises or that part of the airport that U.S. Airways operates and controls. Therefore, Fleet Service Agents are not free to use their meal periods for whatever purpose. Defendants' did not have a uniform practice or policy in place to relieve Fleet Service Agents of all duties allowing them to take a proper meal period the entire meal period. FAC ¶¶ 33-34.  Defendants' uniform practice and policy was to automatically deduct 30 minutes from each Fleet Service Agent's work hours, to account for meal periods.  This automatic deduction is done without regard to whether or not the meal period was actually taken. FAC ¶ 35.

Defendants only authorized meal periods for full-time Fleet Service Agents who were scheduled for shifts of 6 hours or more.  Defendants did not authorize meal periods for part-time

Fleet Service Agents who worked shifts lasting less than 6 hours. Defendants did not authorize rest breaks for part-time Fleet Service Agents who worked shifts lasting less than 4 hours but over 2 hours. Defendants did not authorize a second rest break for Fleet Service Agents who worked shifts over 6 hours but less than 8 hours. Defendants did not authorize a second meal period for Fleet Service Agents working a shift longer than 10 hours. Defendants did not authorize a third rest break for Fleet Service Agents working shifts longer than 10 hours. *FAC ¶¶ 29-46*

When meal or rest periods are missed involuntarily by Fleet Service Agents or because they were not authorized by Defendants, Fleet Service Agents were not compensated one-hour at their regular rate of pay. FAC ¶ 47.

## CAUSES OF ACTIONS

The first cause of action is for unlawful wages and overtime wages. By failing to pay overtime compensation to PLAINTIFFS and similarly situated employees Defendants violated and continues to violate Labor Code § 510 and IWC wage order No. 9, § 3, which require overtime compensation to non-exempt employees. FAC ¶ 59.

Also, the first cause of action alleges that by automatically deducting 30 minutes from each Fleet Service Agent's daily hours worked without regard to whether or not a meal period was actually taken, Defendants' unlawfully withheld wages. FAC ¶ 60.

The second and third causes of action for meal and rest break compensation is predicated on failure to schedule and authorize meal and rest breaks, failure to provide a meal and rest break, failure to compensate when not taken because of realities of the job. Plaintiffs allege because there are not enough employees, breaks are missed. Plaintiffs also allege that they are not allowed to leave the premises during meal periods. Meal periods are not recorded. FAC ¶¶ 65-70; also see ¶¶ 29-47.

The fourth cause of action is for failure to furnish accurate wage statements. This claim is predicated on the furnishing of inaccurate wage statements that do not contain the all hours worked and properly delineates the premium rate for overtime hours. FAC ¶ 28 and ¶¶ 78-79.

The fifth cause of action is for failure to reimburse Fleet Service Agents for their use of cell phones. This cause of action is not at issue for purposes of this motion.

The sixth cause of action is for waiting time penalties for failure to pay all wages due upon separation or termination.

The seventh cause of action is for Bus. & Prof. Code § 17200 (Unfair Competition). By engaging in illegal wage practices, Plaintiffs allege that Defendants have been unreasonably enriched or profited from their unlawful acts. Plaintiffs seek restitution.

The final cause of action is brought pursuant to Labor Code § 2699, which is commonly referred to as PAGA (Private Attorney General Act) which permits an aggrieved employee to seek civil penalties against the employer on behalf of himself and similarly situation employees. Plaintiffs seek civil penalties under for violations to Labor Code §§ 201, 202 and 203 (not paying upon termination or resignation) - penalties pursuant to Labor Code section 2699(f).

Plaintiffs also seek penalties for violations under Labor Code § 223, which makes it "unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Also Plaintiffs seek civil penalties for violating Labor Code §§ 510 and 1194, and violated section 3 of the Industrial Welfare Commission Wage Order 9 by failing to pay overtime at one and one half times the regular rate of pay. Defendant violated § 204 by failing to Plaintiffs all wages due on the designated days of pay. Violations to Labor Code § 223 - penalties pursuant to Labor Code §§ 225.5 and 2699(f); violations Labor Code § 510 – penalties pursuant to Labor Code §§ 558 and 2699(f); violations to IWC Order 9 section 3 – penalties pursuant to § 20 of IWC Order 9; violations to Labor Code § 204 – penalties pursuant to § 2699(f).

With regard to meal and rest breaks, Plaintiff seems civil penalties for violations of Labor Code §§ 226.7 (a) and 512, and sections 11 and 12 of the Industrial Welfare Commission Wage Order 9, by requiring Plaintiffs to work during meal periods and rest breaks and then failing to provide Plaintiffs the required one hour compensation when meal periods were not properly provided. Defendant violated § 204 by failing to Plaintiffs all wages due on the designated days

6

**RESPONSE TO MOTION TO DISMISS CV-12-05860  CRB**

of pay.  Violations to Labor Code § 226.7 (a), § 512 - penalties pursuant to §§ 558 and 2699(f); and violations to § 11 and § 12 of IWC Order 9 - penalties pursuant to § 20 of IWC Order 9. Violations to Labor Code § 204 – penalties pursuant to § 2699(f).

Also, Defendant violated Labor Code § 226(a) and IWC Order 9 section 7 by failing to provide Plaintiffs and other aggrieved employees with an accurate itemized statement in writing (commonly referred to as "paycheck stub") providing at least the following required information: (1) gross wages earned, (2) total actual hours worked by the employee, (3) net wages earned, and (4) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employees.  Violations to Labor Code § 226(a), and penalty pursuant to Labor Code section 2699(f); violations to  IWC Order 9 section 7 – penalties pursuant to § 20 of IWC Order 9.

*A copy of the PAGA letter-notice is attached to Declaration of Arlo Uriarte, Exhibit B.*

## ARGUMENT

The Ninth Circuit in *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1186-1187 (9th Cir. Cal. 1998)* began its analysis with the assumption that state laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest. *See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947).* The Supreme Court has indicated that for example, California prevailing wage law is an example of state action in a field long regulated by the states. *See California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 117 S. Ct. 832, 835, 840, 136 L. Ed. 2d 791 (1997).* Like prevailing wage law, overtime regulation, as well as meal and rest break regulation has long been the province of the States.  In fact, the Federal Labor Standards Act does not contain any meal and rest break regulation.

## I. FEDERAL RULE OF CIVIL PROCEDURE REQUIRES SUMMARY JUDGMENT PROCEDURE IF MATTERS OUTSIDE THE PLEADING ARE TAKEN INTO CONSIDERATION.

Federal Rule of Civil Procedure 12(d) states that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. The notes of the advisory committee also states that the "addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment."

Here, Defendants include with their motion a declaration from Ronald Harbinson, a Managing Director from US Airways. With his declaration are the applicable collective bargaining agreement applicable here. Such evidence if considered by the court in this stage of the proceeding should be deemed extraneous material and should not be considered. If the Court considers such evidence, Plaintiffs should be given the opportunity to properly respond as provided by Rule 56, after close of discovery in this matter.

## II. PLAINTIFFS ASSERT OVERTIME RIGHTS THAT DO NOT REQUIRE INTERPRETATION OF THE CBA AND THAT ARE INDEPENDENT OF THE RAILWAY LABOR ACT.

Defendant relies upon the fact that Plaintiffs' employment with Defendant are subject to a collective bargaining agreement ("CBA"). Defendant alleges that the CBA is governed by the Railway Labor Act ("RLA").

However, the scope of RLA preemption depends on is whether resolution of the state law claim requires a court to construe a provision of the CBA. Lingle v. Norge Div. of Magic Chef, Inc. (1988) 486 U.S. 399, 412 ("[A]n application of state law is preempted by [the LMRA]…only if such application requires the interpretation of a collective bargaining agreement."); Allis-Chalmers Corp. v. Lueck (1985) 471 U.S. 202, 213 [state law claims must be "inextricably intertwined with consideration of the terms of the labor contract"]; Livadas v. Bradshaw (1994) 512 U.S. 107, 124 ["[T]he bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."]; Hawaiian Airlines, Inc. v. Norris (1994) 512 U.S. 246, 263 ["[T]he common purposes of the [LMRA and RLA]…and the desirability of having a uniform common law of labor law pre-emption…support the application of the Lingle standard in RLA cases as well."].

The RLA does not preempt state law claims that are independent of the CBA. Lingle, supra, 486 U.S. at p. 410 [a claim is "independent" if it can be resolved without interpreting the CBA]; Cramer v. Conxolodated Freightways, Inc. (2001) 255 F.3d 683, 691 [To determine wither or not a state law claim is preempted the "plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim."].

Further the RLA do not preempt claims to vindicate non-negotiable state law rights that cannot be bargained away in a CBA. Miller v. AT&T Network Systems (9th Cir. 1988) 850 F.2d 543, 545-547; see also, Livadas, supra, 512 U.S. 107, 125 [LMRA does not preempt an employee's claim related to the late payment of wages under *California Labor Code* § 203]; Valles v. Ivy Hill Corp. (9th Cir. 2005) 410 F.3d 1071, 1081 [California's statutorily guaranteed meal periods are not subject to waiver by a collective bargaining agreement]; Cicairos v. Summit Logistics (2005) 133 Cal.App.4[th] 949, 959-960, [California's statutorily protected rest periods and itemized wage statements were not subject to waiver by a collective bargaining agreement]; Zavala v. Scott Brothers Dairy, Inc. (2006) 143 Cal.App.4[th] 585, 594 [California's "rest period and wage stub itemization requirements are specifically nonwaivable and nonabridgeable by contract"].

A. **CAL. LABOR CODE § 510 IS APPLICABLE HERE BECAUSE DEFENDANTS DO NOT MEET THE REQUIREMENTS OF LABOR CODE § 514.**

Cal. Labor Code § 510 states in subsection (a) that "[e]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

Concurrently enacted, Section 514 states that:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and <u>if the agreement provides premium wage rates for all overtime hours worked</u> and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Here, it is clear from both CBAs that not all overtime hours will be paid if they are taken through shift trades. *See Declaration of Ronald Harbinson, Exhibit A, page 21, Section 5 and Exhibit B, Section 5(D)(1).*

As such, Labor Code § 510's overtime regulation is applicable and independent of the Wage Order.

B. **DETERMINATION OF WHETHER AN OVERTIME VIOLATION EXIST DOES NOT NEED INTERPRETATION OF THE CBA WHEN THE EXERCISE INVOLVES ONLY COUNTING OF HOURS WORKED PER DAY OR PER WEEK.**

The overtime violation alleged by plaintiff does not rest with the interpretation of permissible shift trades or any of the eligibility provisions found in the CBA. Instead, the violations are plain on its face. Did the worker work more than 8 hours in one day? Did the

worker work more than 40 hours in one work week?  If so, under Labor Code § 510, overtime premium is due for those hours.

The CBAs do refer to 8 hours and 40 hours being regular hours and over such is overtime.  *Exhibit A, page 29-30; Exhibit B, Section 6 – Overtime.*  Yet both CBAs do have a blanket prohibition stating: overtime will not apply to hours worked under shift trades, regardless of the length or number of hours worked.  Such rule runs afoul with the minimum standards enunciated by Section 510 and runs afoul with the federal overtime counterpart of overtime being any hours worked over 40 hours in a work week.[1]

### C. BY HAVING A BLANKET PROHIBITION AGAINST OVERTIME ACQUIRED THROUGH SHIFT TRADES, THE CBA HAS BARGAINED AWAY NON-NEGOTIABLE STATE LAW RIGHTS.

By having a blanket rule that overtime hours will not be paid if they are taken through shift trades, the CBAs have bargained away non-negotiable state rights concerning overtime regulation. *See Declaration of Ronald Harbinson, Exhibit A, page 21, Section 5 and Exhibit B, Section 5(D)(1).*

Both CBAs attached to the declaration make clear that overtime is after 8 hours a day and after 40 hours in a week.  But, if the acquisition of overtime hours is procured through shift trading, then those hours are not overtime. While clever, this is a clear violation of the 8 hour a day and 40 hour a week regulation that has reinstated in California under AB 60 (Cal. Labor Code 510-514) which also resulted in the newer Wage Orders including Wage Order #9.

Legislative intent related to Labor Code § 510 makes clear the importance of the 8 hour a day regulation:

> SECTION 1. This act shall be known and may be cited as the "Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999."

---

[1] Recently, in *Cruz v. Sky Chefs, 2012 U.S. Dist. LEXIS 181321 (N.D. Cal. Dec. 21, 2012)* Plaintiff's minimum wage claim alleges that, due to Defendant's allegedly illegal rounding of the time employees clocked in and out, Defendant failed to pay Plaintiff and putative class members minimum wages for all hours worked. The resolution of this dispute turns merely on the number of hours worked by Plaintiff and putative class members, and whether they received the minimum wage for that time. *See Gregory*, 317 F.3d at 1053 & nn.3-4; *Lara*, 2011 WL 4480167, at *4. The court will not have to interpret the CBA to resolve the claim. The **RLA** therefore does not preempt the claim.

> SEC. 2. The Legislature hereby finds and declares all of the following:
>
> (a) The eight-hour workday is the mainstay of protection for California's working people, and has been for over 80 years.
>
> (b) In 1911, California enacted the first daily overtime law setting the eight-hour daily standard, long before the federal government enacted overtime protections for workers.
>
> (c) Ending daily overtime would result in a substantial pay cut for California workers who currently receive daily overtime.
>
> (d) Numerous studies have linked long work hours to increased rates of accident and injury.
>
> (e) Family life suffers when either or both parents are kept away from home for an extended period of time on a daily basis.
>
> (f) In 1998 the Industrial Welfare Commission issued wage orders that deleted the requirement to pay premium wages after eight hours of work a day in five wage orders regulating eight million workers.
>
> (g) Therefore, the Legislature affirms the importance of the eight-hour workday, declares that it should be protected, and reaffirms the state's unwavering commitment to upholding the eight-hour workday as a fundamental protection for working people.
>
> SEC. 21. Wage Orders number 1-98, 4-98, 5-98, 7-98, and 9-98 adopted by the Industrial Welfare Commission are null and void, and Wage Orders 1-89, 4-89 as amended in 1993, 5-89 as amended in 1993, 7-80, and 9-90 are reinstated until the effective date of wage orders issued pursuant to Section 517.
>
> SEC. 22. The Industrial Welfare Commission shall study the extent to which alternative workweek schedules are used in California and the costs and benefits to employees and employers of those schedules, and report the results of the study and recommendations to the Legislature not later than July 1, 2001.

The RLA do not preempt claims to vindicate non-negotiable state law rights that cannot be bargained away in a CBA. Miller v. AT&T Network Systems (9th Cir. 1988) 850 F.2d 543, 545-547; see also, Livadas, supra, 512 U.S. 107, 125 [LMRA does not preempt an employee's claim related to the late payment of wages under *California Labor Code* § 203].

### III. PLAINTIFFS' MEAL AND REST BREAK CLAIMS ARE NOT PREDICATED ON THE INTERPRETATION OF THE CBA AND ADHERANCE TO CALIFORNIA LAW ON MEAL AND REST BREAK DOES NOT AFFECT SERVICES AS DEFINED BY THE ADA.

#### A. PLAINTIFFS' MEAL AND REST BREAK CLAIMS ARE CLEAR ON ITS FACE AND DO NOT REQUIRE INTERPRETATION.

Plaintiffs' allegations in the FAC regarding meal and rest break claims concern the realities of their workday as enumerated in FAC ¶¶ 31-47. They do not involve allegations that Defendants are violative of the CBA (needing interpretation), instead, based on California law on meal and rest breaks, whether the uniform practice and policy of Defendants did not provide the minimum requirements as recently explained in *Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004 (2012)*. The California Supreme Court went at length with regard to timing and frequency of these breaks. Regardless of any meal and rest break scheme and limitations by Defendants, it must comport with the minimum standards.

For example, Plaintiffs allege that Defendants did not authorize rest breaks for part-time Fleet Service Agents who worked shifts lasting less than 4 hours but over 2 hours. Defendants did not authorize a second rest break for Fleet Service Agents who worked shifts over 6 hours but less than 8 hours. Defendants did not authorize a second meal period for Fleet Service Agents working a shift longer than 10 hours. Defendants did not authorize a third rest break for Fleet Service Agents working shifts longer than 10 hours. *FAC ¶¶ 29-46.*

These, if proven, would run afoul of the meal and rest break regulation found in IWC Wage Order #9 and in Labor Code 226.7 (and *Brinker).*

#### B. APPLICATION OF CALIFORNIA MEAL AND REST BREAK REGULATION DOES NOT AFFECT SERVICES PROVIDED BY THESE PLAINTIFFS.

Defendant relies upon the Airline Deregulation Act ("ADA") which prohibits states from "enacting or enforcing any law…relating to rates, routes or services of any air carrier." 49 U.S.C. § 41713(b)(1); see also, Morales v. Trans World Airlines, Inc. (1992) 504 U.S. 374, 386-387 [state law regulating advertising of airline fares held preempted]; American Airlines, Inc. v.

Wolens (1995) 513 U.S. 219, 222 [state consumer fraud law regulating airline business practices held preempted].

None of the *California Labor Code* statutes at issue on their face regulates the rates, routes or services of any air carrier.

The Ninth Circuit held in *Charas v. TWA, 160 F.3d 1259, 1261 (9th Cir. Cal. 1998)* that in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry. Congress did not intend to preempt passengers' run-of-the-mill personal injury claims. Accordingly, the Ninth Circuit held that Congress used the word "service" in the phrase "rates, routes, or service" in the ADA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail. In the context in which it was used in the Act, "service" was not intended to include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.

Fleet Service Agents are responsible for ramp related services that include cleaning, fueling, and bag handling for passengers (FAC ¶ 12) and such fall outside the above definition. There is no showing that regulation of these fleet service agents would "adversely affect the economic deregulation of the airlines."

Defendants argue that meal and rest regulation impacts services because if a particular person has to take a meal period then they cannot fuel the plane.  Certainly, but isn't part of the motivation for proper overtime, meal and other labor code regulation is for the employer to hire enough employees, not only for the sake of the health and safety of that employee but also for the sake of the larger economy.  Also, a worker can be taken off a meal period or rest breaks anytime, just make sure to provide the one hour compensation.

## IV.   OTHER CLAIMS

The cause of action for inaccurate wage statements and waiting time penalties are also not pre-empted and are independent of overtime and meal and rest break claims. The inaccurate

wage statement claim is certainly an independent claim that requires accurate information be found in Plaintiffs' wage statements. If it is found that certain hours were automatically deducted and not recorded as hours worked for example, an inaccuracy has occurred. Labor Code § 226 requires that all hours worked is stated and that all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee be accurately stated.

Waiting time penalties are also independent claims that fall outside the interpretation of the CBA. Recently, the Ninth Circuit held waiting time penalty claims are not pre-empted by the RLA in the context of a remand motion holding that RLA is not subject to complete preemption. the RLA is not subject to complete pre-emption. *Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1245 (9th Cir. Or. 2009)*

Also, Defendants do not articulate the basis for pre-emption of the PAGA claims. Instead, it simply states that if the overtime and break claims are pre-empted so is PAGA. Plaintiffs rights to civil penalties encompass other statutes beyond those for overtime and meal and rest violations. *See Exhibit B to Declaration of Arlo Uriarte.*

For example, by requiring Plaintiffs to work during meal periods and rest breaks and then failing to provide Plaintiffs the required one hour compensation when meal periods were not properly provided. Defendant violated § 204 by failing to Plaintiffs all wages due on the designated days of pay.

Dated: December 28, 2012                LIBERATION LAW GROUP, P.C.

                                        By:_____
                                            Arlo Garcia Uriarte
                                            Attorney for PLAINTIFFS