1  ROBERT A. SIEGEL (S.B. #64604)
   rsiegel@omm.com
2  O'MELVENY & MYERS LLP
   400 South Hope Street, 18th Floor
3  Los Angeles, CA 90071-2899
   Telephone: 213-430-6000
4  Facsimile: 213-430-6407

5  ADAM P. KOHSWEENEY (S.B. #229983)
   akohsweeney@omm.com
6  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
7  San Francisco, CA 94111-3823
   Telephone: 415-984-8912
8  Facsimile: 415-984-8701

9  Attorneys for Defendant
   US Airways, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH TIMBANG ANGELES, NOE LASTIMOSA, on behalf of themselves and on behalf of others similarly situated, and the general public,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>US AIRWAYS, INC., and DOES 1 through 50,<br>　　　　　　Defendants. | Case No. 3:12-cv-05860 CRB<br><br>**REPLY OF DEFENDANT US AIRWAYS, INC. TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and (6)**<br><br>Hearing Date: February 8, 2013<br>Time: 10:00 a.m.<br>Courtroom: 6<br>Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

    I.    PLAINTIFFS HAVE FAILED TO RESPOND TO SEVERAL OF US AIRWAYS' ARGUMENTS, AND ACCORDINGLY THOSE CAUSES OF ACTION SHOULD BE DISMISSED ............................................................... 3

    II.    PLAINTIFFS' OVERTIME, MEAL PERIOD, AND REST BREAK CLAIMS ARE PREEMPTED BY the RAILWAY LABOR ACT ........................ 4

        A.    Plaintiffs Do Not Dispute the Scope of RLA Preemption, and Fail to Refute US Airways' Explanation of Why Plaintiffs' Claims Require Interpretation of the Parties' Collective Bargaining Agreement ................................................................................................ 4

        B.    Plaintiffs Have Ignored the Case Law Cited in US Airways' Motion to Dismiss ................................................................................................... 7

        C.    Plaintiffs' Argument That the CBA's Provisions Regarding Shift Trades "Bargain Away Non-Negotiable State Law Rights" Misstates the Applicable Legal Test ............................................... 8

    III.    PLAINTIFFS' MEAL PERIOD AND REST BREAK CLAIMS ARE also PREEMPTED BY THE AIRLINE DEREGULATION ACT ............................. 10

    IV.    PLAINTIFFS' OTHER CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREDICATED ON PLAINTIFFS' OTHER DEFICIENT CAUSES OF ACTION ........................................................................................ 12

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adames v. Exec. Airlines, Inc.*,
   258 F.3d 7 (1st Cir. 2001) ............................................................................................. 4, 7, 8

*Allen v. Dollar Tree Stores, Inc.*,
   475 F. App'x 159 (9th Cir. 2012) ........................................................................................ 3

*Blackwell v. SkyWest Airlines, Inc.*,
   No. 06cv0307 DMS (AJB), 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) ...................... passim

*Brinker Rest. Corp. v. Superior Court*,
   53 Cal. 4th 1004 (2012) ....................................................................................................... 5

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998) ........................................................................................... 11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ....................................................................................................... 12

*Charas v. Trans World Airlines, Inc.*,
   160 F.3d 1259 (9th Cir. 1998) ..................................................................................... 10, 11

*Cruz v. Sky Chefs, Inc.*,
   No. C 12-02705 DMR, 2012 U.S. Dist. LEXIS 181321 (N.D. Cal. Dec. 21,
   2012) ..................................................................................................................................... 8

*Enwere v. HUD Fair Hous.*,
   No. C 11–0716 PJH, 2011 WL 1842714 (N.D. Cal. May 16, 2011) .................................... 3

*Espinal v. Northwest Airlines*,
   90 F.3d 1452 (9th Cir. 1996) ............................................................................................... 4

*First Resort, Inc. v. Herrera*,
   No. C 11–5534 SBA, 2012 WL 4497799 (N.D. Cal. Sept. 28, 2012) .................................. 3

*Fitz-Gerald v. SkyWest Airlines, Inc.*,
   155 Cal. App. 4th 411 (2007) ......................................................................................... 8, 12

*Lingle v. Norge Div. of Magic Chef, Inc.*,
   486 U.S. 399 (1988) ......................................................................................................... 7, 8

*Miller v. AT&T Network Sys.*,
   850 F.2d 543 (9th Cir. 1988) .......................................................................................... 9, 10

*Moore-Thomas v. Alaska Airlines, Inc.*,
   553 F.3d 1241 (9th Cir. 2009) ........................................................................................... 13

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (2011) ..................................................................................... 12, 13

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004).................................................................................................. 5

*Santiago v. Aramark Unif. & Career Apparel, LLC*,
 No. C 12-04462 JSW, 2012 WL 586894 (N.D. Cal. Nov. 19, 2012) ...................................... 3

*Saridakis v. United Airlines*,
 166 F.3d 1272 (9th Cir. 1999).................................................................................................. 4

*Scognamillo v. Credit Suisse First Bos. LLC*,
 No. C03-2061 TEH, 2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) ....................................... 4

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003).................................................................................................... 5

*Van Buskirk v. Cable News Network, Inc.*,
 284 F.3d 977 (9th Cir. 2002).................................................................................................... 5

**STATUTES**

45 U.S.C. § 151 ............................................................................................................................... 4

49 U.S.C. § 40120 ......................................................................................................................... 10

49 U.S.C. § 41713(b)(1) ............................................................................................................... 10

Cal. Bus. & Prof. Code § 17200 ................................................................................................... 12

Cal. Lab. Code § 2698 .................................................................................................................. 12

Cal. Lab. Code § 514 .................................................................................................................. 3, 9

**OTHER AUTHORITIES**

DLSE Memorandum re Understanding AB60, dated Dec. 23, 1999, at 8 (available
 at http://www.dir.ca.gov/dlse/ab60update.htm) ...................................................................... 3

**RULES**

Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 5

**PRELIMINARY STATEMENT**

In its Motion to Dismiss, dated November 26, 2012 [Doc. No. 6] ("Motion to Dismiss"), Defendant US Airways, Inc. ("US Airways") demonstrated that the first, second, third, fourth, sixth, seventh, and eighth causes of action in this matter should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or (6). Plaintiffs' Response to Motion to Dismiss, dated December 31, 2012 [Doc. No. 15] (the "Opposition") ignores several of US Airways' arguments and responds to the others with conclusory citations that do not address the specific analyses set out in the Motion to Dismiss. Accordingly, for the reasons discussed below, Plaintiffs' causes of action should be dismissed for several independent and overlapping reasons.

*First*, the Opposition fails to address US Airways' arguments regarding Wage Order 9's Railway Labor Act ("RLA") exemption as it pertains to Plaintiffs' overtime and wage statement claims, and also fails to dispute US Airways' argument that Plaintiffs' claim under California's Unfair Competition Law ("UCL") is predicated on deficient claims. Accordingly, US Airways' motion should be granted as to the first cause of action for unpaid overtime, fourth cause of action for inaccurate wage statements, and seventh cause of action for unfair competition.

*Second*, the Motion to Dismiss also explained that in order to adjudicate Plaintiffs' first cause of action for unpaid overtime, second cause of action for failure to provide meal periods, and third cause of action for failure to provide rest breaks, this Court would have to interpret the parties' collective bargaining agreement ("CBA"), including provisions regarding overtime qualifiers, shift trades, work shifts, meal periods, and rest breaks. Plaintiffs do not dispute that the RLA preempts any claim that requires interpretation of a collective bargaining agreement, but rather assert that their claims do not require any such interpretation. This assertion, however, is made in the abstract and Plaintiffs never address the specific collective bargaining agreement ("CBA") provisions or case law discussed in the Motion to Dismiss. Instead, Plaintiffs argue that their claims involve non-negotiable state law rights. Whether or not a given right may be negotiated away, however, is completely independent from whether the prosecution of a state law claim will require interpretation of a collective bargaining agreement. Plaintiffs' first, second, and third causes of action will require such interpretation, and are therefore preempted by the

RLA.

*Third*, the Motion to Dismiss demonstrated that Plaintiffs' second cause of action for failure to provide meal periods and third cause of action for failure to provide rest breaks are preempted by the Airline Deregulation Act ("ADA") because the state laws on which these claims are based "relate to" the services of US Airways – *i.e.*, the point-to-point transportation of US Airways' passengers and cargo. Plaintiffs admit that Fleet Service Agents are responsible for fueling aircraft, and further admit that this duty relates to US Airways' services. Further, they never address the fact that Fleet Service Agents are also responsible for duties including loading and unloading aircraft, servicing aircraft, cleaning aircraft interiors, performing minor preventive maintenance, operating jet ways, and performing security checks. All of these functions are "services" under Ninth Circuit precedent, and by regulating when these services may be provided, California's meal and rest breaks "relate to" US Airways' services and are preempted by the ADA. Plaintiffs have not offered any argument as to these job duties, and instead argue that preempting meal and rest claims is not consistent with the remedial nature of California's statutes. This purported policy argument, however, does not provide a basis for ignoring the preemption provision contained in the ADA.

*Fourth*, Plaintiffs' fourth cause of action for inaccurate wage statements, sixth cause of action for waiting time penalties, seventh cause of action under California's UCL, and eighth cause of action under California's Private Attorneys General Act ("PAGA") are all predicated on Plaintiffs' deficient overtime, meal, and rest claims because they cannot be adjudicated without first establishing a violation of California law regarding overtime, meal period, and rest break requirements. Plaintiffs state that these claims are "independent" of their other claims, but offer no case law in support of this statement and do not explain how the causes of action can survive or be adjudicated independently.

Accordingly, for all the reasons set out in the Motion to Dismiss, Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth causes of action should be dismissed with prejudice.

**ARGUMENT**

**I. PLAINTIFFS HAVE FAILED TO RESPOND TO SEVERAL OF US AIRWAYS' ARGUMENTS, AND ACCORDINGLY THOSE CAUSES OF ACTION SHOULD BE DISMISSED**

Plaintiffs have not responded in any way to the following arguments contained in US Airways' Motion to Dismiss: the first cause of action for unpaid overtime should be dismissed to the extent it is brought under Wage Order No. 9 because Wage Order No. 9 § 1(E) states that Wage Order No. 9 does not apply to individuals covered by a collective bargaining agreement pursuant to the Railway Labor Act[1]; the fourth cause of action for inaccurate wage statements should also be dismissed to the extent it is brought under Wage Order No. 9 due to Wage Order 9's RLA exemption; and the seventh cause of action for violation of California's UCL should be dismissed because it is predicated on Plaintiffs' other deficient claims. These portions of the Motion to Dismiss should be granted in light of Plaintiffs' failure to respond. *See, e.g.*, *Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159, 159 (9th Cir. 2012) ("The court properly dismissed Allen's harassment and retaliation claims because her opposition to the motion to dismiss failed to respond to Dollar Tree's argument that those claims were time-barred."); *First Resort, Inc. v. Herrera*, No. C 11–5534 SBA, 2012 WL 4497799, at *9 (N.D. Cal. Sept. 28, 2012) ("[G]iven First Resort's failure to respond to the City's arguments for dismissal of the implied preemption claim, the City's motion to dismiss said claim is GRANTED."); *Enwere v. HUD Fair Hous.*, No. C 11–0716 PJH, 2011 WL 1842714, at *2 (N.D. Cal. May 16, 2011) (dismissing plaintiff's original complaint in "view of plaintiff's . . . failure to respond to defendant's briefing

---

[1] Plaintiffs' Opposition also misreads Section 514 of the California Labor Code, fails to provide any case law to support its incorrect interpretation, and fails to address US Airways' argument. (Opp. at 10; Mot. to Dismiss at 6 n.4.) To the extent that a collective bargaining agreement provides for overtime compensation, and provides for a "regular hourly rate of pay" that is "not less than 30 percent more than the state minimum wage," that individual ***is not covered by California Labor Code § 510.*** Cal. Lab. Code § 514; *see* DLSE Memorandum re Understanding AB60, dated Dec. 23, 1999, at 8 (available at http://www.dir.ca.gov/dlse/ab60update.htm); *Blackwell v. SkyWest Airlines, Inc.*, No. 06cv0307 DMS (AJB), 2008 WL 5103195, at *10 (S.D. Cal. Dec. 3, 2008). In addition, determining whether the collective bargaining agreement provides for overtime compensation in compliance with § 514 will itself involve interpretation of the CBA given the parties' dispute regarding the CBA's shift trade terms. *See Santiago v. Aramark Unif. & Career Apparel, LLC*, No. C 12-04462 JSW, 2012 WL 586894, at *3-4 (N.D. Cal. Nov. 19, 2012) (agreeing with defendant that "in order to determine whether the exemption provided in Section 514 applies in this case, the Court will be required to interpret the terms of the CBA").

1  on the motion to dismiss with legally meritorious argument"); *Scognamillo v. Credit Suisse First*

2  *Bos. LLC*, No. C03-2061 TEH, 2005 WL 2045807, at *9 (N.D. Cal. Aug. 25, 2005) (granting a

3  motion to dismiss a claim that plaintiffs failed to respond to in their papers or at oral argument

4  and construing plaintiffs' failure to respond "as a concession").

**II.  PLAINTIFFS' OVERTIME, MEAL PERIOD, AND REST BREAK CLAIMS ARE PREEMPTED BY THE RAILWAY LABOR ACT**

  **A.  Plaintiffs Do Not Dispute the Scope of RLA Preemption, and Fail to Refute US Airways' Explanation of Why Plaintiffs' Claims Require Interpretation of the Parties' Collective Bargaining Agreement**

State law claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, when their resolution requires interpretation or application of the CBA. *See Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999); *Espinal v. Northwest Airlines*, 90 F.3d 1452, 1458 (9th Cir. 1996); *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 11 (1st Cir. 2001); *Blackwell v. SkyWest Airlines, Inc.*, No. 06cv0307 DMS (AJB), 2008 WL 5103195, at *12-14 (S.D. Cal. Dec. 3, 2008). Plaintiffs do not dispute this principle. (Opp. at 9 ("[T]he scope of RLA preemption depends on is whether resolution of the state law claim requires a court to construe a provision of the CBA.").) The Motion to Dismiss applied this legal principle to Plaintiffs' claims by explaining which provisions of the CBA this Court would have to interpret to adjudicate Plaintiffs' overtime, meal period, and rest break claims. (Mot. to Dismiss at 6-8, 9-11.) Plaintiffs' Opposition, on the other hand, only describes the applicable legal framework and then states that Plaintiffs' claims do not require such interpretation. Plaintiffs never address the specifics of US Airways' arguments, however, nor do they explain how this Court would be able to adjudicate the claims without interpreting the CBA.

As explained in the Motion to Dismiss, the operative CBA has specific provisions regarding meal periods and rest breaks. Accordingly, in order to adjudicate Plaintiffs' meal and rest claims, this Court will have to interpret the CBA's provisions, determine how they are applied, and compare this to the requirements of state law. To take only one example, Article 5 of the CBA states that "[t]he Company will make every effort to schedule meal periods" and that premium payments will be made if the employee is unable to take a meal period "due to

1 Company requirements." (Harbinson Decl. ¶ 4, Ex. A at Art. 5, p. 17.) Accordingly, this Court will have to determine what "make every effort" means in theory and in practice and compare that to the requirements articulated in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1020 (2012), and will also have to determine what "due to Company requirements" means in the same context. Plaintiffs offer no argument to counter these specific examples of CBA provisions that require interpretation to resolve their overtime claim.

With regard to the overtime claims, Plaintiffs' Opposition contends that such claims would only require the Court to determine whether more than eight hours were worked in a day or more than forty hours were worked in a workweek and, if so, whether overtime was paid. (Opp. at 10-11.) That is not the case. The FAC contends, on a class basis, that US Airways had a common policy of (i) not paying overtime in connection with shift trades; and (ii) deducting thirty minutes for meal periods, thereby undercounting the length of a shift and resulting in unpaid overtime. (FAC ¶¶ 20-27, 30-35, 60.) This Court will therefore be asked to determine what US Airways' policies are in these respects and whether the policies are consistent with the minimum requirements of California law. Since US Airways' policies regarding overtime qualifiers, shift trades, and meal periods and rest breaks are contained in the parties' CBA, resolution of Plaintiffs' overtime claims will require interpretation of the CBA.

Plaintiffs' overtime contentions regarding shift trades, for example, will require this Court to interpret Articles 5, 6, and 30 of the CBA.[2] Article 6 and Article 30 discuss overtime qualifiers and the Lead Agent premium, and would have to be interpreted to identify when US Airways pays overtime and the proper amount of that overtime. (Harbinson Decl. ¶ 4, Ex. A at Art. 6, pp. 23-32.) Article 5 of the CBA sets forth US Airways' policy regarding shift trades, which

---

[2] Plaintiffs argue that the Harbinson Declaration and accompanying CBAs "should not be considered." (Opp. at 8.) Plaintiffs fail to acknowledge or address the case law discussed in the Motion to Dismiss, however, which demonstrates that this Court may consider the Harbinson Declaration and exhibits both because they pertain to an attack on jurisdiction and because the FAC relies on facts and practices that arise from the CBAs. (Mot. to Dismiss at 3 n.1.) Accordingly, Rule 12(b)(1) and 12(b)(6) permit this Court to review the CBAs and the authenticating Harbinson Declaration without converting the Motion to Dismiss to a summary judgment motion. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

1   Plaintiffs characterize as a "blanket prohibition" of overtime for "hours worked under shift
2   trades" (Opp. at 10-11) by focusing on one provision in Article 5. US Airways, however,
3   disagrees with this interpretation. A separate provision of Article 5 states that a shift trade request
4   need not be permitted if granting it would conflict with state overtime law. (Harbinson Decl. ¶ 4,
5   Ex. A at Art. 5, p. 21.) Accordingly, in order to resolve overtime claims relating to US Airways'
6   shift trade policies, this Court will have to resolve the parties' interpretative dispute regarding the
7   state law exception, and will also need to interpret the CBA's provisions regarding (i) when and
8   how employees may trade shifts, (ii) the maximum hours that may be traded, and (iii) the number
9   of times employees may trade shifts. In addition, this Court would have to interpret the CBA's
10  state law overtime exception in the context of IWC Wage Order 9 § 1(E) and California Labor
11  Code § 514 – both of which allow for collective bargaining agreements to vary from otherwise
12  applicable state law. (Mot. to Dismiss at 6 n.4; *Santiago*, 2012 WL 586894 at *3-4.)

This Court will also have to interpret Articles 5, 6, and 30 of the CBA to resolve
Plaintiffs' overtime claims to the extent they arise from alleged meal period deductions. The
Court would first have to determine the actual amount of time worked in a given shift, which
would necessitate determining whether a meal period was required under state law and whether a
compliant meal period was provided (to the extent it was required).[3] That inquiry would require
significant interpretation of Article 5 of the CBA, as discussed above. Once the shift's actual
length was determined, the Court would then have to determine whether overtime would be paid
under Article 6's overtime qualifiers, the amount of that overtime pursuant to Article 30, and
whether the overtime required under the CBA was consistent with state law requirements. As a
result, Plaintiffs' overtime claims cannot be resolved without interpretation and application of the
CBA.

Courts have found that the RLA preempts overtime claims in similar situations, including
instances where it was necessary not only to interpret the collective bargaining agreement's

---

[3] For example, if an individual's shift starts at 9:00 and ends at 5:30, the individual has either worked 8 hours or 8.5 hours depending on whether a compliant 30-minute meal period was taken. The Court could not determine whether 0.5 hours of overtime was due without determining whether the individual took a compliant meal period.

language but also determine how it was applied by the employer. *See Blackwell*, 2008 WL 5103195, at *14 ("CBA's can include implied terms arising from 'practice, usage, and custom. . . . Disputes over implicit terms, as much as express terms, can qualify as 'minor disputes' under the RLA and thus preempt state law claims."). Nothing in the Opposition addresses the specific fact-based arguments and examples set out above and in the Motion to Dismiss.

### B. Plaintiffs Have Ignored the Case Law Cited in US Airways' Motion to Dismiss

As argued in US Airways' Motion to Dismiss, several courts have held that the RLA preempts state overtime and meal period and rest break claims which require interpretation of the operative collective bargaining agreement. *See Adames*, 258 F.3d at 13-14 (concluding that plaintiffs' overtime claims were preempted because they required interpretation of the collective bargaining agreement regarding the meaning of "worked," hours "on duty," "flight time," and "base and overtime pay"); *id.* at 14-15 (concluding that plaintiffs' meal period claims were preempted because they required interpretation of the collective bargaining agreement's "'duty time' requirements and the various types of duty status,' as well as the industry-specific practices, including the need to have flight attendants available throughout a flight's duration," and "applicable 'regular' rate"); *Blackwell*, 2008 WL 5103195, at *12 ("Given the many applicable pay rates, categories, and differentials, any attempt to determine whether, when, and how much compensation is owed to Blackwell necessarily requires an interpretation of the CBA's provisions. Similarly, the meal and rest period violations would require an interpretation of the CBA to calculate the penalty for such violations of 'one (1) hour of pay at the employee's regular rate of compensation.'").

Plaintiffs ignore these cases – indeed, they are ***never*** mentioned in the Opposition. Instead, Plaintiffs rely on cases that recognize that if a claim does not require interpretation of a collective bargaining agreement, then it is not preempted. For example, Plaintiffs rely upon *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), for two legal propositions: (1) the "scope of RLA preemption depends on [ ] whether resolution of the state law claim requires a court to construe a provision of the CBA"; and (2) the "RLA does not preempt state

REPLY OF US AIRWAYS, INC. TO OPP.
CASE NO. 3:12-CV-05860 CRB

law claims that are independent of the CBA." (Opp. at 9.) US Airways does not dispute that preemption is predicated on the need to interpret a collective bargaining agreement. *Lingle*, however, is not factually analogous to the case at hand. In *Lingle*, the Court concluded that plaintiff's claim for retaliatory discharge was "independent" of the collective bargaining agreement because resolution of the state-law claim did not require interpretation of the collective bargaining agreement. *Id.*[4] Unlike in *Lingle*, however, this case will involve interpretation of a collective bargaining agreement for all the reasons discussed above and in the Motion to Dismiss.

Plaintiffs also cite *Cruz v. Sky Chefs, Inc.*, No. C 12-02705 DMR, 2012 U.S. Dist. LEXIS 181321 (N.D. Cal. Dec. 21, 2012), but *Cruz* is inapposite for the same reason. In *Cruz*, the court concluded that plaintiff's *minimum wage claim* was not preempted by the RLA because it would not require interpretation of the collective bargaining agreement. *See id*. at *9-10. *Cruz*, however, cites *Blackwell* with approval. *Id. Blackwell*, as previously discussed, found that the plaintiff's wage and hour claims were preempted because they did require interpretation of the collective bargaining agreement. *Blackwell*, 2008 WL 5103195, at *10-15. US Airways has explained why the instant case does require interpretation of the parties' CBA, but Plaintiffs – other than conclusory cites to *Lingle* and *Cruz* – have not explained how this Court can adjudicate their claims without interpreting Articles 5, 6, and 30 of the CBA. Merely citing cases like *Lingle* and *Cruz* is not sufficient – Plaintiffs must also show why the instant case is like those cases and not like *Blackwell*, *Fitz-Gerald*, and *Adames*. Plaintiffs have not done this and, accordingly, the Motion to Dismiss should be granted.

      **C.**      **Plaintiffs' Argument That the CBA's Provisions Regarding Shift Trades "Bargain Away Non-Negotiable State Law Rights" Misstates the Applicable Legal Test**

As discussed in the Motion to Dismiss, RLA preemption applies to wage and hour claims – including overtime, meal period, and rest break claims – just as it applies to other claims. *See Adames*, 258 F.3d at 11; *Blackwell*, 2008 WL 5103195, at *12-14. Plaintiffs, however, have

---

[4] Even then, the Court carefully limited the scope of its holding: "Today's decision should make clear that interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements." *Id*.

tried to cloud the analysis by arguing that the CBA's shift trade provisions "bargain away non-negotiable state law rights." (Opp. at 11-12.) This argument is unconvincing for three reasons: (1) Plaintiffs have misinterpreted Article 5 of the CBA; (2) whether a collective bargaining agreement bargains away a non-negotiable right has nothing to do with RLA preemption; and (3) state law overtime rights *can be* negotiated away in a collective bargaining agreement.

First, Plaintiffs contend that Article 5 of the CBA "bargained away non-negotiable state rights concerning overtime" through a "blanket prohibition" on overtime resulting from shift trades. (Opp. at 11.) US Airways, however, contends that no rights were "bargained away" and that Article 5 is not a "blanket prohibition" because Article 5 states that shift trade requests need not be granted if they would result in a violation of state overtime law. (Harbinson Decl. ¶ 4, Ex. A. at Art. 5, p. 21.) Accordingly, the parties disagree as to the proper interpretation and application of the CBA. This Court does not have jurisdiction to resolve this disagreement.

Second, Plaintiffs' argument in this regard relies on *Miller v. AT&T Network Systems*, 850 F.2d 543 (9th Cir. 1988). This case, however, is inapposite. *Miller* held – consistent with US Airways' position in this matter – that preemption does not apply if "a court can uphold state rights without interpreting the terms of a CBA." *See id*. at 545. Although *Miller* found that some of the plaintiff's claims *were* preempted, *id*. at 550-51, it found that the discrimination claims were not preempted because the court could ascertain whether discrimination had occurred without interpreting the collective bargaining agreement. US Airways has already distinguished discrimination claims from overtime claims. (Mot. to Dismiss at 8 n.6.) Unlike discrimination claims, wage and hour claims involve rights that are the result of both state law and private agreement and therefore resolving those claims often requires interpretation of a collective bargaining agreement.

Third, California's overtime provisions are not non-negotiable. California law explicitly states that collective bargaining agreements entered into in accordance with the RLA are excepted from Wage Order 9's overtime and wage statement requirements, and the Labor Code also allows overtime rights to be waived through collective bargaining agreements in general. *See* Wage Order No. 9, § 1(E); Cal. Lab. Code § 514 (stating that the Labor Code's overtime provisions do

"not apply to an employee covered by a valid collective bargaining agreement" if certain conditions are met). Thus, Plaintiffs' claim that CBAs may never provide exceptions to overtime and wage statement requirements is unfounded. As the court in *Miller* stated, a "right is nonnegotiable if the state law does not permit it to be waived, alienated, or altered by private agreement." 850 F.2d at 546. California clearly permits the waiver and alteration of overtime and wage statement rights through a collective bargaining agreement, so such "rights" are not non-negotiable under *Miller*.

## III. PLAINTIFFS' MEAL PERIOD AND REST BREAK CLAIMS ARE ALSO PREEMPTED BY THE AIRLINE DEREGULATION ACT

Plaintiffs' second cause of action for meal period violations and third cause of action for rest break violations should also be dismissed because they are preempted by the Airline Deregulation Act, 49 U.S.C. § 40120 *et seq.* ("ADA"). As discussed in the Motion to Dismiss, the ADA includes a broad preemption provision which provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of a law related to a . . . service of an air carrier." 49 U.S.C. § 41713(b)(1). The Ninth Circuit has defined "services" in this context to mean the "schedules, origins, and destinations of the point-to-point transportation of passengers, cargo, and mail." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265-66 (9th Cir. 1998) (en banc). This definition encompasses the duties performed by Fleet Service Agents, including but not limited to loading and unloading aircraft, servicing aircraft, cleaning aircraft interiors, performing minor preventive maintenance, operating jet ways, and performing security checks. (Harbinson Decl. ¶ 4, Ex. A at Art. 4, pp. 11-14.) These duties directly impact the airline schedules and the point-to-point transportation of passengers and cargo and therefore are "services" under the ADA. *See Charas*, 160 F.3d at 1265-66; *Blackwell*, 2008 WL 5103195, at *17. By regulating when an employee may or may not perform job duties, California's meal and rest requirements "relate to" a "service" for purposes of the ADA and are therefore preempted. *Blackwell*, 2008 WL 5103195, at *15, *17 (finding that California's meal and rest break requirements "would have the impermissible force and effect of regulating an air carrier's services").

Plaintiffs' Opposition relies on the Ninth Circuit's decision in *Charas*. However, as explained in US Airways' Motion to Dismiss, the definition of "service" articulated in *Charas* encompasses the duties performed by Fleet Service Agents such as Plaintiffs. (Mot. to Dismiss at 11-13.) *Charas* states that "service" does not include "the provision of in-flight beverages" and "similar amenities," but does include items that affect "schedules, origins, and destinations of the point-to-point transportation of passengers, cargo, and mail." *Charas*, 160 F.3d at 1261. Plaintiffs' duties fall squarely within this definition, and Plaintiffs do not provide any analysis to contradict US Airways' position that duties such as loading and unloading aircraft, servicing aircraft, and operating jet ways directly affect the transportation of passengers, cargo, and mail. Indeed, Plaintiffs admit that their job duties affect services. (Opp. at 14 (admitting that Plaintiffs' duties "***certainly***" relate to services "because if a particular person has to take a meal period then they cannot fuel the plane") (emphasis added).) Plaintiffs' real argument is that the ADA should not be allowed to preempt state employment laws. (*Id.* at 14.) The perceived policy rationale advanced by Plaintiffs, however, does not provide a basis for ignoring the preemption provision enacted by the legislature – particularly because existing law makes it clear that the ADA ***does*** preempt state wage and hour laws that relate to services. *Blackwell*, 2008 WL 5103195, at *17. Plaintiffs attempt to support their position by citing *Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), for the proposition that matters within a state's police powers are not subject to federal preemption. (Opp. at 7.) *Mendonca*, however, addressed whether the Federal Aviation Administration Authorization Act ("FAAA") preempted California's Prevailing Wage Law. It has nothing to do with the ADA, *Charas*, or *Blackwell*, and certainly does not support the idea that the ADA cannot preempt state wage and hour laws.

For these reasons, as discussed in more detail in the Motion to Dismiss, Plaintiffs' second cause of action for meal period violations and third cause of action for rest break violations "relate to" US Airways' services and are preempted by the ADA.

## IV. PLAINTIFFS' OTHER CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PREDICATED ON PLAINTIFFS' OTHER DEFICIENT CAUSES OF ACTION

Plaintiffs' fourth cause of action for inadequate wage statements, sixth cause of action for waiting time penalties, seventh cause of action for violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and eighth cause of action for violation of the Labor Code Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* ("PAGA") cannot be adjudicated without resolving Plaintiffs' deficient causes of action for overtime and meal/rest violations. Accordingly, they must be dismissed along with these causes of action. (Mot. to Dismiss at 13-15 (citing *Blackwell*, 2008 WL 5103195, at *19-20; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011); *Fitz-Gerald v. SkyWest Airlines, Inc.*, 155 Cal. App. 4th 411, 420-21, 422 (2007).) Plaintiffs' cursory counterarguments are unavailing.

*First*, Plaintiffs' argument that their wage statements are not predicated on their deficient overtime, meal period, and rest break claims is unconvincing. The FAC states that "[t]he pay stub or itemized wage statements received by Fleet Service Agents do not accurately reflect which hours are hours worked and which hours are regular hours worked." (FAC ¶ 28.) This allegation is premised on Plaintiffs' overtime and meal period/rest break-related allegations that US Airways' "payroll services when accounting for hours worked and overtime hours worked does not properly pay Fleet Service Agents pursuant to California overtime regulations" (*id.* ¶ 27), and that US Airways had a "uniform practice and policy [ ] to automatically deduct 30 minutes from each Fleet Service Agent's work hours, to account for meal periods" (*id.* ¶ 34; *see also* Opp. at 15). As alleged in Plaintiffs' FAC, the wage statement is only inaccurate to the extent wages were owed regarding Plaintiffs' overtime, meal period, and rest break claims. Based on the arguments set forth in this Reply and in US Airways' initial Motion to Dismiss, Plaintiffs' overtime, meal period, and rest break claims are preempted, and, because Plaintiffs' wage statement claim rises and falls with these deficient claims, Plaintiffs' wage statement claim is deficient as well.

1     *Second*, Plaintiffs' claim for waiting time penalties is viable only if Plaintiffs demonstrate an underlying violation of law. The violations of law alleged in Plaintiffs' FAC are the failure to provide correct overtime, meal periods, and rest breaks – allegations which must be dismissed for the reasons set out in the Motion to Dismiss and this Reply. Accordingly, Plaintiffs cannot recover penalties based on these allegations. Plaintiffs again ignore *Blackwell*, which found that plaintiff's claims for waiting time penalties should be dismissed because they were derivative of plaintiffs' preempted overtime, meal, and rest break claims. *Blackwell*, 2008 WL 5103195, at *20. Moreover, *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009), cited by Plaintiffs, is inapplicable to the current matter because it does not discuss whether claims for waiting time penalties premised on deficient claims can be maintained.

    *Third*, Plaintiffs state that US Airways' Motion to Dismiss does "not articulate the basis for pre-emption of the PAGA claims." Yet this articulation is clearly present in US Airways' Motion to Dismiss (Mot. to Dismiss at 14-15) – specifically, US Airways contended that California's PAGA creates a cause of action based on violations of other provisions of the Labor Code. Thus, in order to establish a PAGA claim, it is necessary to have a successful underlying cause of action. Plaintiffs' PAGA claims are founded on their overtime and meal period and rest break claims. (*See* Opp. at 15 ("For example, by requiring Plaintiffs to work during meal periods and rest breaks and then failing to provide Plaintiffs the required one hour compensation when meal periods were not properly provided.").) Here, "[b]ecause the underlying causes of action fail, the derivative [ ] PAGA claims also fail." *Price*, 192 Cal. App. 4th at 1147.[5]

## CONCLUSION

For the foregoing reasons and the reasons stated in the Motion to Dismiss, US Airways respectfully requests that this Court dismiss Plaintiffs' first cause of action (unpaid overtime), second cause of action (failure to provide meal periods), third cause of action (failure to provide rest breaks), fourth cause of action (inaccurate wage statements), sixth cause of action (waiting time penalties), seventh cause of action (unfair competition), and eighth cause of action (PAGA)

---

[5] Plaintiffs fail to address US Airways' arguments regarding California's UCL. The above-stated PAGA argument is similarly applicable to Plaintiffs' UCL claims.

1 | as alleged in the First Amended Complaint.
2 | Dated: January 11, 2013

O'MELVENY & MYERS LLP<br>
ROBERT A. SIEGEL<br>
ADAM P. KOHSWEENEY<br>
<br>
By: /s/ Adam P. KohSweeney<br>
Adam P. KohSweeney<br>
Attorneys for Defendant US Airways, Inc.

71217133