Arlo García Uriarte, SBN 231764
Un Kei Wu, SBN 270058
Ernesto Sanchez, SBN 278006
LIBERATION LAW GROUP, P.C.
2760 Mission Street
San Francisco, CA 94110
Telephone: (415) 695-1000
Facsimile: (415) 695-1006

Attorneys for PLAINTIFFS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Joseph Timbang Angeles, Noe Lastimosa, on behalf of themselves, and on behalf of others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>US Airways, Inc., and DOES 1 through 50,<br><br>Defendants. | Case No. 3:12-cv-05860 CRB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, FOR APPOINTMENT OF CLASS REPRESENTATIVE, AND CLASS COUNSEL**<br><br>Date:       February 28, 2014<br>Time:       10:00am<br>Place:      Ctrm. 6, 17th Floor<br><br>Hon. Charles R. Breyer |

**TO DEFENDANT US AIRWAYS, INC. AND ITS ATTORNEYS OF RECORD IN THIS ACTION: PLEASE TAKE NOTICE** that on Friday, February 28, 2014, at 10:00 A.M., or as soon thereafter this matter may be heard in Courtroom 6 of the aforementioned Court, located at 450 Golden Gate Avenue, San Francisco, California, 94109. Plaintiffs Joseph Angeles and Noe Lastimosa ("Plaintiffs") will move, pursuant to Rule 23 of the Federal Rules of Civil Procedure and governing case law, to certify the class and subclasses stemming from Plaintiffs' Third Amended Complaint and as defined in the memorandum below.

1   Plailntiffs meet the four requirements of Rule 23(a) in that the five hundred and fifty four

2   (554) Fleet Service Agents are sufficiently numerous, the core claims of Shift Trade overtime and

3   unpaid hours from pre-shift activities and post-shift work arise from company-wide payroll and

4   timekeeping company practices, for which Courts have consistently found commonality to be easily

5   present. Plaintiffs' claims are typical of the class in that Plaintiffs and putative class members were

6   subjected to the same illegal timekeeping and payroll practices. Plaintiffs and their counsel are

7   adequate representatives. They have vigorously litigated and pursued the class' interests and have no

8   conflicts of interest with regards to the putative class.

9   Plaintiffs also meet the requirements of Rule 23(b)(3) in that common issues of law and fact

10   predominate over any questions affecting only individual members. Plaintiffs are able to show that

11   their damages stemmed from the Defendant's common timekeeping and payroll practices that

12   created the liability at issue.

13   This motion is based on the supporting Memorandum of Points and Authorities, the

14   numerous Declarations submitted with supporting exhibits, all pleadings and papers on file with the

15   Court in this action, and such other evidence as may be presented to the Court at or before the

16   hearing of this Motion.

17

18   Dated: January 24, 2014                          Respectfully Submitted,

19                                                    LIBERATION LAW GROUP, P.C.

20

21                                                    By:_____

22                                                              Arlo Uriarte

23

24

25

26

27

28

# **Table of Contents**

SUMMARY OF ARGUMENT ...................................................................................................... iv

I. INTRODUCTION & PROPOSED CLASS AND SUBCLASSES .................................................. 1

II. PROCEDURAL POSTURE ............................................................................................... 2

III. THE CELL PHONE CLAIM ............................................................................................. 2

IV. SUMMARY OF SUBSTANTIVE LAW .............................................................................. 3

   A. California Labor Code Section 510 (1st Subclass) ................................................ 3

   B. Pre-Shift and Post Shift Activities (2nd and 3rd Subclasses) .................................. 4

     1. California Law Requires Payment of All Hours Worked ................................... 4

     2. Donning and Doffing of Protective Gear, and Related Activities, Are Compensable ........... 5

   C. Inaccurate Wage Statement Subclass (4th Subclass) ............................................. 5

   D. Waiting Time, Unfair Competition, and PAGA (Remaining Subclasses) ................. 5

V. FACTUAL BACKGROUND .............................................................................................. 6

   A. Defendant's Shift Trade Policy Creates Unpaid Overtime ..................................... 6

   B. Defendant Does Not Pay FSA For Pre-Shift Activities .......................................... 7

   C. Defendant Does Not Pay FSA For Post-Shift Work .............................................. 7

   D. Defendant Provides Inaccurate Wage Statements ................................................. 8

VI. CLASS CERTIFICATION UNDER RULE 23 ....................................................................... 8

   A. Defendant's alleged violations are precisely suited for class action treatment ......... 8

   B. The Four Requirements of Rule 23(a) are satisfied ............................................... 9

     1. Class and Proposed Subclasses are Sufficiently Numerous ............................. 9

     2. The Class and Subclasses Meet the Commonality Standard ........................... 9

     3. Plaintiffs' Claims are Typical of the Class ................................................. 11

     4. Adequacy is Satisfied as to the Class and Subclasses ................................... 11

   C. The REQUIREMENTS OF RULE 23(B)(3) ARE MET ......................................... 12

     1. Common Questions of Law and Fact Predominate ........................................ 12

VII. CONCLUSION ............................................................................................................. 15

# Table of Authorities

**Cases**

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) ............................................................ 5

*Amchen Prods., Inc. v Windsor*, 521 U.S. 591 (1997) ........................................................ 13

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) ...................................... 5

*Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330 (N.D. Ill. 2009) ...................... 10

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001) ................................ 12

*Bibo v. Federal Express, Inc.*, 2009 US Dist. LEXIS 78388 (N.D. Cal., Apr. 21, 2009) ............. 4, 13

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................................... 8, 12, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (U.S. 1974) .............................................. 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................... 11

*Gales v. WinCo Foods*, 2011 U.S. Dist. LEXIS 96125 (N.D. Cal. Aug. 26, 2011) ............................ 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ........................................ 9, 11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ........................................ 11

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) .............................................................. 5

*In re Autozone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ............................................. 8

*Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859 (11th Cir. 1986) ..................................... 9

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ........................... 11

*Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. Cal. 2013) ...................................... 13, 14

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152 (9th Cir. 2001) .................................................................................. 13

*Mesa v. Ag-Mart Produce, Inc.*, 2008WL 2790224 (M.D. Fla. 2008) ............................... 10

*Mevorah v. Wells Fargo Home Mortg.*, 571 F.3d 953 (9th Cir. 2009) ............................... 8

*Morillon v Royal Packing Co.*, 22 Cal. 4th 575 (Cal. 2000) ......................................... 4

*Otsuka v. Polo Ralph Lauren Corp.*,251 F.R.D. 439(N.D. Cal. 2008) .......................... 10, 13

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ............................................... 9

*Reich v. IBP, Inc.,* 38 F.3d 1123 (10th Cir. 1994) ............................................................. 5

*Rutti v. Lojack Corp., Inc.,* 596 F.3d 1046 (9th Cir. 2010) *(separate opinion by Silverman, J.)* ......... 4

*Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996) ...................................... 13

*Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935 (9th Cir. 2009) ............................ 8

*Wal-Mart Stores, Inc. v. Dukes,* 541 U.S. ____, 131 S. Ct. 2541 (U.S. 2011) .............................. 8, 10

*Weigele v. FedEx Ground Package System, Inc,* 267 F.R.D. 614 (S.D. Cal. 2010) .......................... 13

*Zavala v. Scott Brothers Dairy, Inc.* 143 Cal. App 4th 585 (Cal. App. 2d Dist. 2006) ...................... 5

*Zinser v. Accufix Research Inst Inc.,* 235 F.3d 1188 (9th Cir. 2001) ............................................ 13, 15

## Statutes

Cal. Bus. and Profs. Code **§ 17200 et. seq.** ........................................................... 2, 6, 10

Cal. Lab. Code § 201 ....................................................................................................... 5

Cal. Lab. Code § 202 ....................................................................................................... 5

Cal. Lab. Code § 203 ....................................................................................................... 5

Cal. Lab. Code § 226 ..................................................................................................... 5, 10

Cal. Lab. Code **§ 2699** ................................................................................................. 2, 6, 10

Cal. Lab. Code **§ 510** ............................................................................................. 1, 3, 4, 10

Cal. Stats. 1999 Ch. 134, §2 .......................................................................................... 4

## Other Authorities

DLSE Opinion Letter 2002.05.17 ................................................................................... 5

IWC Wage Order No. 9-2001 .......................................................................................... 4

## Rules

Fed. R. Civ. P. 23 ................................................................................................... passim

1

## SUMMARY OF ARGUMENT

2

Plaintiffs, through the evidence and arguments presented below, satisfy the class certification

3

requirements of Rule 23. Plaintiffs' core claims of failure to pay overtime and unpaid wages are

4

supported by substantive law. According to the Court, Plaintiffs' claim for overtime is valid because

5

"Defendant is not excepted from complying with section 510 because the CBAs governing

6

Plaintiffs' employment do not meet all of the requirements set forth in section 514." February 19

7

Order, [dkt. 23]. Plaintiffs' claim for unpaid wages is supported by the established principal that

8

employers must pay employees for *all* hours worked. *See Morillon v Royal Packing Co.,* 22 Cal. 4th

9

575 (2000).

10

11

The fact that Defendant uses an automated timekeeping system to remove clocked-in

12

minutes, or "Grace Periods," from the timekeeping records of Fleet Service Agents (FSA) is

13

undisputed. Defendant insists that through, "Exception Reports," it is able to adjust the timekeeping

14

records of FSA to accurately reflect all minutes worked. Defendant's Exception Report policy is

15

patently inadequate as substantiated by FSA and an analysis of Defendant's timekeeping and payroll

16

records. These records show over 1.8 million dollars ($1,800,000) of unpaid wages due to

17

Defendant's Grace Period policy. During these Grace Period minutes, FSA prepare for work before

18

scheduled shifts and finish work duties after scheduled shifts.  FSA prepate for work by putting on

19

their safety gear, checking flight schedules, and talking to their supervisors about their assignments.

20

Before being able to clock out for the day, FSA have to finish up work duties and walk back to the

21

operations center where they clock out.  These compensable minutes are not captured by either the

22

timekeeping system nor the Exception Report.

23

24

Regarding their procedural burden under the Federal Rules, Plaintiffs' claims satisfy the

25

following requirements – under Rule 23(a): (1) numerosity, (2) common questions of law or fact, (3)

26

27

28

typicality, and (4) adequate representation – and under Rule 23(b), predominance of common issues and superiority of class action adjudication. The proposed class and subclasses are sufficiently numerous because they contain over five hundred and fifty individuals located across California. Also, as required by 23(a)(2), numerous common questions of law or fact exist here; for example, (1) whether Defendant is liable to FSA for failure to pay overtime in connection with Shift Trades; (2) whether FSA were precluded from receiving compensation for pre-shift work by Defendant; and (3) whether Defendant's policies and practices denied FSA compensation for post-shift work. Further, the typicality requirement under 23(a)(3) is satisfied because Plaintiffs worked under the same employment policies and practices as all other FSA employed by Defendant. This fact led Plaintiffs and FSA to suffer the same aforementioned wage and hour violations because of Defendant. Defendant's engaged in a course of conduct that adversely affected Plaintiffs and FSA alike. Plaintiffs fulfill final 23(a) requirement – adequacy. Both Plaintiffs and their counsel have prosecuted this case vigorously and have no known, valid conflicts with putative class members.

Finally, Plaintiffs satisfy Rule 23(b) because common questions predominate over individual issues and class action is superior to any other form of adjudication. Common questions predominate here because Plaintiffs claims can be resolved on a class-wide basis in adequate and efficient fashion. For example, with regards to Plaintiffs' Grace Period claim, the predominant issue to be resolved would be whether FSA were "suffered and permitted to work" and therefore under the "control of the employer" when engaging in pre-shift activities such as donning of protective gear and checking flight schedules, and talking to supervisors about their assignments?  Similarly, were FSA "suffered and permitted to work" and therefore under the "control of the employer" when engaging in post-shift activities related finishing their work and walking to the operations center to clock out at the end of their shift?

The proposed class is "sufficiently cohesive" to warrant class action treatment because of Defendant's state-wide policies and practices. *Amchen Prods., Inc. v Windsor*, 521 U.S. 591, 623 (1997). "Courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purpose." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009).

For the reasons described herein, Plaintiffs respectfully requests this Court certify the class and subclasses as set forth below, appoint them as class representatives, and appoint Arlo Uriarte and The Liberation Law Group, P.C. as class counsel.

## I.     INTRODUCTION & PROPOSED CLASS AND SUBCLASSES

Plaintiffs Joseph Angeles and Noe Lastimosa ("Plaintiffs"), on behalf of themselves and the proposed classes, seek redress for various wage and hour violations committed by Defendant US Airways, Inc. ("Defendant"). Plaintiffs and putative class members are current and former Fleet Service Agents ("FSA") that worked for Defendant during the "Claim Period" (June 22, 2008, through date of certification). Plaintiffs allege that Defendant, through its policies, procedures, and practices, including its employee shift swap and pick-up system ("Shift Trades" or "Shift Trading"), have systematically denied Plaintiffs and putative class members overtime compensation, wages for work performed before and after scheduled shifts, and accurate wage statements under California law.[i] Plaintiffs propose to represent the following putative class and subclasses:

**Class: "All current and former employees of Defendant who worked as Fleet Service Agents in the State of California at any time on or after June 22, 2008, until the date of certification and who are members of one or more of the following subclasses:**

**Subclass No. 1: Fleet Service Agents who worked overtime because of Shift Trades and did not receive the resulting overtime premium pursuant to California Labor Code § 510.**

**Subclass No. 2: Fleet Service Agents who, while clocked-in, engaged in pre-shift work and are owed compensation for hours worked.**

**Subclass No. 3: Fleet Service Agents who, while clocked-in, engaged in post-shift work and are owed compensation for hours worked.**

**Subclass No. 4: Fleet Service Agents in Subclass No. 1, Subclass No. 2, or Subclass No. 3 who received inaccurate wage statements.**

**Subclass No. 5: Fleet Service Agents in Subclass No. 1, Subclass No. 2, or Subclass No. 3 who failed to receive all their wages either upon termination or seventy two (72) hours after resignation.**

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION: Angeles v. US Airways 3:12-cv-05860 CRB

1

**Subclass No. 6**: Fleet Service Agents in Subclass No. 1, Subclass No. 2, or Subclass No. 3 who are entitled to restitution under Business and Professions Code § 17200 et. seq.

**Subclass No. 7**: Fleet Service Agents in Subclass No. 1, Subclass No. 2, or Subclass No. 3, along with The State of California Labor & Workforce Development Agency (LWDA), who are entitled to civil penalties under California Labor Code § 2699 (PAGA).

## II.    PROCEDURAL POSTURE

Plaintiffs filed suit on June 22, 2012. Defendant removed the matter to U.S. District Court on November 15, 2012, and subsequently moved to dismiss. On February 19, 2013, Defendant's motion to dismiss was granted in part and denied in part ("Feb. 19 Order").[ii] Parties stipulated to Plaintiffs' Second Amended Complaint and filed a proposed order which was signed by the Court on March 14, 2013. Next, Defendant moved to dismiss Plaintiffs' second cause of action and also moved for reconsideration of the Court's Feb. 19 Order; Defendant's motion to dismiss Plaintiffs' second cause of action was granted while its motion for reconsideration was denied on June 26, 2013. On November 8, 2013, the Court granted Plaintiffs' motion for leave to file Plaintiffs' Third Amended Complaint, which added a "Grace Period" claim alleging that Defendant does not pay FSA for work performed before and after shifts. On November 27, 2013, Defendant submitted its answer to Plaintiffs' Third Amended Complaint.

## III.    THE CELL PHONE CLAIM

After careful investigation and consideration, Plaintiffs are no longer pursuing their § 2802 claim, alleging Defendant's failure to reimburse FSA for work-related cell phone use.[iii] Putative class members have indicated to Plaintiffs' counsel that, while it occurs, work-related cell phone use is minimal and very rarely leads to a business expense.[iv] Furthermore, since their relevant cell phone plans provided for unlimited minutes, Plaintiffs did not incur any out of pocket expenses for work-related cell phone use.[v] Therefore, class certification is not feasible as to this claim because Plaintiffs lack typicality. Fed. R. Civ. P. 23(a)(3).

## IV.    SUMMARY OF SUBSTANTIVE LAW

### A.  California Labor Code Section 510 (1st Subclass)

Plaintiffs' overtime theory is that Defendant failed to pay the required overtime premium under California Labor Code § 510 when FSA worked overtime hours because of Shift Trades.[vi] In the Feb. 19 Order, this Court held that "Defendant is not excepted from complying with section 510 because the CBAs governing Plaintiffs' employment do not meet all of the requirements set forth in section 514."[vii] Labor Code 510(a) states:

> [E]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

FSA are employed subject to a CBA[1] which "explicitly den[ies] premium compensation for overtime hours worked pursuant to Shift Trade."[viii] The CBA states Shift Trades will not be approved if applicable law requires overtime payment.[ix] Despite this, Defendant approves Shift Trades, state-wide, that result in overtime hours without paying the corresponding overtime compensation; this is admitted and undisputed by Defendant.[x]

Through counsel and putative class member declarations, Defendant has expressed that current FSA enjoy the Shift Trade system and would like to continue Shift Trading.[xi] Defendant has similarly expressed that if Plaintiffs prevail, the company would be forced to put an end to Shift Trades.[xii] Defendant's reasoning here is flawed. If Plaintiffs prevail, Defendant could allow FSA to continue Shift Trading in accordance with the CBA's limitations.[xiii] Or, Defendant could allow Shift Trades to continue as they are and simply pay the resulting overtime. Defendant may not *want* to provide premium pay for Shift Trade overtime, but it certainly could. If Defendant would rather save money than allow FSA to Shift Trade, then that is its prerogative. However, Defendant's current attempts to circumvent overtime laws *while* saving money is directly at odds with the Labor Code

---

[1] There are two CBAs at issue in this case because of a 2005 merger between US Airways, Inc. and America West, Inc. *See generally* IAM CBA and TWU CBA attached to Harbinson Declaration as Ex. A and Ex. B , Def. Mot. to Dismiss [dkt. 6]. The CBAs contain similar language with respect to the provisions that are pertinent to this motion.

and cannot be overlooked. Protection of worker health, safety, and family life were integral concerns when the California legislature enacted Labor Code §510 and restored the eight hour workday. Cal. Labor Code §510, Stats 1999 Ch. 134, §2.

### B. Pre-Shift and Post Shift Activities (2nd and 3rd Subclasses)

Plaintiffs' minimum wage theory maintains that FSA were suffered or permitted to work before and after scheduled shifts.[xiv] FSA do not receive rightfully earned compensation because pre and post-shift minutes spent working are automatically deducted from their timekeeping and payroll records by Defendant's timekeeping software.[xv]

### 1. California Law Requires Payment of All Hours Worked

California law requires payment for all hours worked. *Bibo v. Federal Express, Inc.,* 2009 US Dist. LEXIS 78388, 9 (N.D. Cal., Apr. 21, 2009). Industrial Welfare Commission ("IWC") Wage Order No. 9-2001, §2(H)[2] includes a definition for "hours worked" – "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." "[T]he operative question in determining what qualifies as time worked before or after the official workday is whether at a particular moment, employees are "subject to the control of [their] employer." *Id. citing Morillon v Royal Packing Co.,* 22 Cal. 4th 575, 591, 94 Cal. Rptr. 2d 3, 995 P.2d 139 (Cal. 2000). *See also Rutti v. Lojack Corp., Inc.,* 596 F.3d 1046, 1061-62 (9th Cir. 2010) *(separate opinion by Silverman, J.)* ("under California law, it is the level of the employer's control over its employees that is determinative.") FSA, pursuant to the aforementioned authority, were under Defendant's control when they performed work before and after scheduled shifts. Before scheduled shifts, they were required to arrive early and prepare for work; after scheduled shifts, they were required to complete work duties and extend their work days. In spite of this, FSA did not receive wages for all work performed before and after scheduled shifts.

---

[2] While IWC Wage Order No. 9-2001, §3 does not apply here, §2(H) does apply.

**2.      Donning and Doffing of Protective Gear, and Related Activities, Are Compensable**

The U.S. Supreme Court unanimously held that donning and doffing protective gear, integral and indispensable to the employees' principal activity, was itself a principal activity, and thus walking to and from changing areas, post-donning and pre-doffing, was part of the workday for which the employees were entitled to compensation. *IBP, Inc. v. Alvarez,* 546 U.S. 21 (U.S. 2005)[3]*; See also, Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) (required plant uniforms)*; Reich v. IBP, Inc.,* 38 F.3d 1123 (10th Cir. 1994) (protective safety equipment). FSA donned protective gear before scheduled shifts in order to prepare for work.[xvi] FSA were not paid for this or for completing other necessary tasks before scheduled shifts.[xvii]

**C.  Inaccurate Wage Statement Subclass (4th Subclass)**

Plaintiffs' theory is that Defendant failed to provide accurate wage statements to FSA.[xviii] Labor Code § 226(a) requires "information be provided to employees on accurate itemized wage statements, in writing showing (1) gross wage earned, (2) total hours worked…(5) net wages… and (9) all applicable hourly rates."

In *Zavala v. Scott Bros. Dairy, Inc.,* the Second District Court of Appeals held that "the obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, *actual* number of hours worked…failure to list the precise number of hours worked during the pay period conflicts with the express language of the statute and 'stands in the way of the statutory purpose" (emphasis added). *Zavala v. Scott Brothers Dairy, Inc.* 143 Cal. App 4th 585, 591-592 (Cal. App. 2d Dist. 2006) (*quoting, with approval*, DLSE Opinion Letter 2002.05.17 at 3)[xix].

**D.  Waiting Time, Unfair Competition, and PAGA (Remaining Subclasses)**

Plaintiffs pursue the ancillary claims described in subclasses 5, 6, and 7.[xx] Defendant owes Waiting Time penalties to separated FSA. California employees must be paid all wages owed upon

---

[3] In *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-03 (9th Cir. 2003), the Ninth Circuit held that putting on and taking off protective gear was necessary to the principal work of employees at a meat packing plant because the gear was required by the employer's rules, by federal regulators, and by the "'nature of the work.'" 339 F.3d at 903 (quoting 29 C.F.R. § 790.8(c) n.65).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION: Angeles v. US Airways 3:12-cv-05860 CRB

5

separation. Cal. Labor Code §201-2. The remedy for failing to pay all wages is thirty (30) day's pay. Labor Code §203.

Plaintiffs also seek restitution and disgorgement of profits, remedies provided under California Business & Professions Code §17200, including application of the four year limitations period, and civil penalties under California Labor Code §2699 (PAGA).

## V.    FACTUAL BACKGROUND

Defendant operates commercial flights in ten (10) airport stations across California and employs FSA to assist with ramp-related services.[xxi] Plaintiffs were employed by Defendant as FSA at San Francisco International Airport.[xxii] As FSA, they engaged in such duties as baggage and cargo handling, aircraft direction near the gate, aircraft cabin and lavatory cleaning, loader and forklift operation, and other tasks to facilitate fleet service.[xxiii] Plaintiff Angeles was employed part-time while Plaintiff Lastimosa was employed both full-time and part-time.[xxiv] FSA participate in a bidding process, based on employee seniority, to receive their scheduled shifts.[xxv]

### A. Defendant's Shift Trade Policy Creates Unpaid Overtime

Despite fixed work schedules, FSA are permitted to pick up, drop, and swap shifts via Shift Trades.[xxvi] Plaintiffs, like other FSA, managed to work significant overtime hours because of Shift Trading[4]/[xxvii] Notwithstanding, Defendant does not pay FSA overtime compensation when Shift Trades lead to overtime hours worked.[xxviii] Shift Trading allows some part-time FSA to work as much or more than full-time FSA.[xxix] Full-time FSA receive better benefits than part-time FSA.[xxx] Defendant has discretion over how many part-time FSA it employs versus how many full-time FSA it employs.[xxxi] Accordingly, Defendant is able to employ the maximum amount of part-time FSA in order to save money by providing reduced benefits while still receiving the shift coverage it requires.[xxxii]

---

[4] FSA are owed $2,407,275 in unpaid overtime according to Plaintiffs' forensic accounting expert. *See Breshears Declaration (Breshears Dec.)* p. 6, Ex. C, and Ex. D.

## B.  Defendant Does Not Pay FSA For Pre-Shift Activities

Plaintiffs consistently engaged in pre-shift activities that were never paid by Defendant.[xxxiii] Defendant's timekeeping software does not pay FSA for minutes worked until their scheduled shifts begin unless they seek and attain a timesheet adjustment from a supervisor.[xxxiv] Despite Defendant's contention that timesheet adjustments are available to compensate pre-shift work, FSA are never paid for pre-shift activities performed while on-the-clock – these include checking flight schedules, meeting and conferring with supervisors, and putting on safety gear.[xxxv] The aforementioned pre-shift activities are necessary and must be completed in preparation for work shifts because Defendant has strict policies in place to ensure that FSA are exactly on-time and completely ready for work by the start of their scheduled shifts.[xxxvi] FSA are penalized via a point system if they are even one[5] or two minutes late for their scheduled shifts.[xxxvii] In order to comply with Defendant's punctuality and attendance requirements, FSA must perform the aforementioned pre-shift activities, and Defendant's practice is to not provide the corresponding compensation.[6]/[xxxviii]

## C.  Defendant Does Not Pay FSA For Post-Shift Work

Plaintiffs habitually performed work after their scheduled shifts that was not paid by Defendant.[xxxix] FSA often work past their scheduled shifts because of the nature of the airline industry (flight delays and cancellations are common occurrences).[xl] Defendant automatically pays FSA if they work thirty (30) minutes or more past their scheduled shifts, but there is no automatic payment for work performed between zero (0) and thirty (30) minutes past scheduled shifts.[xli] When working between zero (0) and thirty (30) minutes past their scheduled shifts, FSA are only paid correctly if they seek and attain a timesheet adjustment from their supervisor.[xlii] Despite Defendant's assertions that FSA simply ask for these adjustments and receive them on a form called an "Exception Report", this practice is ineffective.[xliii] Plaintiffs' timesheet adjustment requests were often rebuffed by supervisors.[xliv] Other putative class members similarly encountered supervisors

---

[5] Plaintiff Joseph Angeles was penalized for arriving one minute late to work. *See* Angeles/Lastimosa000087 attached as Ex. A to Angeles Dec.
[6] FSA are owed $1,806,829 in wages for pre-shift and post-shift work according to Plaintiffs' forensic accounting expert. *(Breshears Dec.)* p. 6, Ex. C, and Ex. D.

that refused to adjust their timesheets.[xlv] Moreover, some putative class members incorrectly believed they were automatically paid for post-shift work without having to claim extra minutes via an Exception Report.[xlvi]

### D.  Defendant Provides Inaccurate Wage Statements

FSA consider Defendant's wage statements difficult to read and decipher; they contain numerous categories and are very difficult to understand, even by veteran employees.[xlvii] Furthermore, Defendant issues wage statements to FSA that do not accurately reflect actual hours worked and the proper corresponding pay because of the Shift Trade and Grace Period violations previously discussed.[xlviii] The preceding causes FSA to engage in mathematical computations in order to reconstruct their time records and determine if they have received proper pay.[xlix]

## VI.    CLASS CERTIFICATION UNDER RULE 23

Class certification is governed by Federal Rule of Civil Procedure 23. Generally, when adjudicating class certification, courts must take the substantive allegations of the class action complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 908 n. 17 (9th Cir. 1975). At this juncture, "the question is not whether the…plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (U.S. 1974) (*But see Wal-Mart Stores, Inc. v. Dukes*, 541 U.S. ____, 131 S. Ct. 2541, 2551-2552 (U.S. 2011) (a court's "rigorous analysis" as to whether "the prerequisites of Rule 23(a) have been satisfied…frequently entails some overlap with the merits of plaintiff's underlying claim").

Rule 23 establishes a two-step procedure for analyzing class certification. First, Rule 23(a)'s four requirements must be satisfied: (1) numerosity, (2) common questions of law or fact, (3) typicality, and (4) adequate representation. Then, the lawsuit must qualify for class action status under Rule 23(b). Fed. R. Civ. P. 23(a) and 23(b). *See In re Autozone, Inc.*, 289 F.R.D. 526, 530 (N.D. Cal. 2012).

### A.  Defendant's alleged violations are precisely suited for class action treatment

Defendant's company wide timekeeping and payroll policies carry great weight for certification purposes. *Gales v. WinCo Foods*, 2011 U.S. Dist. LEXIS 96125, 32 (N.D. Cal. Aug. 26,

2011) ("Courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purpose." *citing Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009). *See also Mevorah v. Wells Fargo Home Mortg.*, 571 F.3d 953, 958 (9th Cir. 2009) ("centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof").

The allegations and evidence presented in support of class certification are typical of class claims based on common employer timekeeping and payroll policies and practices in California. The instant case concerns putative class members who, as FSA, share the same employment position and job duties. Further, they are all connected by the same CBA and employment policies established and applied by Defendant. Defendant's company-wide policies create numerous common issues that are suitable for class action adjudication.

### B.  The Four Requirements of Rule 23(a) are satisfied

#### 1.  Class and Proposed Subclasses are Sufficiently Numerous

Federal Rule of Civil Procedure 23(a)(1) only requires a showing that joinder of putative class members is difficult or inconvenient; a showing that joinder is impossible is not required. Fed R. Civ. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Practicability of joinder depends on various factors including class size, class geographic dispersion, and facility of service. *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986). The instant proposed class not only consists of several hundred people, five hundred and fifty four (554), but FSA are scattered all over California, as depicted by the class list and employment records produced by Defendant. Since this litigation implicates so many individuals dispersed over such a large geographic region, it is unlikely that Defendant will successfully challenge numerosity. For purposes of the waiting time penalty claim, there are over two-hundred (200) separated employees.[1]

#### 2.  The Class and Subclasses Meet the Commonality Standard

Federal Rule of Civil Procedure 23(a)(2) requires that common questions of law or fact exist among putative class members. Fed R. Civ. P. 23(a)(2). The Ninth Circuit has referred to this as a

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION: Angeles v. US Airways 3:12-cv-05860 CRB

9

1  "minimal requirement" and construes it "permissively" and "less rigorous[ly] than that under Rule

2  23(b)(3)." *Hanlon* at 150 F.3d 1020. *See also Parra v. Bashas', Inc.,* 536 F.3d 975, 978 (9th Cir.

3  2008). The Supreme Court has stated that commonality here depends "not the raising of common

4  questions – even in droves – but, rather the capacity of a classwide proceeding to generate common

5  *answers* apt to drive the resolution of the litigation" (emphasis in original). *Dukes* 131 S. Ct. at 2551.

6  Here, since the core claims of Shift Trade overtime and unpaid hours from pre-and post shift

7  activities arise from payroll and timekeeping company wide practices, Courts have found

8  commonality to be easily present.[7]

9          **Shift Trade Subclass:** The Shift Trade subclass is based on Defendant's policy of not paying

10  overtime for any resulting overtime hours worked as a result of the company's permissive Shift

11  Trading system. One common legal question is whether such a company wide practice is violative of

12  Labor Code § 510.

13          **Pre & Post Shift Subclasses:** Whether Defendant suffered or permitted putative class

14  members to engage in pre-shift activities and post-shift work that constitutes compensable time is a

15  common question "the truth or falsity of which will resolve an issue that is central to the validity of

16  each one of the claims in one stroke." *Dukes* 131 S. Ct. at 2551. Also, a common inquiry which can

17  readily be resolved by reference to the timekeeping and payroll records, whether the wages for

18  compensable time spent in pre-shift activities and post-shift work by FSA remain unpaid.

19          **Wage Statement Subclass:** Commonality is also apparent here. The common legal and

20  factual issue is whether the wage statements complied with Labor Code § 226. If FSA were

21  incorrectly paid and an accounting of their hours worked and overtime wages were recorded

22  improperly, then the wage statements were inaccurate and therefore non-compliant.

23

24  _____

25  [7] *See Otsuka v. Polo Ralph Lauren Corp.,*251 F.R.D. 439(N.D. Cal. 2008) (common questions existed as to whether the employer's
    arrears program as a whole violated state law); *Bricker v. Planet Hollywood New York, L.P.,* 2009 WL 2603149, *1 (S.D. N.Y. 2009)

26  ("with respect to commonality, all of the putative class claims arise out of common questions of law and fact relating to Defendant'
    payroll practices and whether they comply with federal and state wage laws."); *Barragan v. Evanger's Dog and Cat Food Co., Inc.,*

27  259 F.R.D. 330,333 (N.D. Ill. 2009) ("commonality exists because all class members claim the same common pay practice of
    Defendant..."); *Mesa v. Ag-Mart Produce, Inc.,* 2008WL 2790224, *8 (M.D. Fla. 2008) (certifying class based on plaintiffs allegation

28  that all piece-rate employee were paid through the same payroll system and that the payroll practices applied to the named plaintiff
    and other putative class members).

**Waiting Time, the Bus. & Prof. Code § 17200, and PAGA Subclasses:** These are ancillary or derivative claims that depend on the answers to above common questions of law and fact.

### 3. Plaintiffs' Claims are Typical of the Class

Federal Rule of Civil Procedure 23(a)(3) requires the claims or defenses of the representative parties to be typical of the claims or defenses of the class. Fed R. Civ. P. 23(a)(3). In other words, typicality is satisfied when plaintiffs share the same or similar injury with class members because of the same course of conduct engaged in by defendant. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011) *citing Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs' claims are undoubtedly typical of the claims or defenses of the putative class. Plaintiffs and putative class members engaged in Shift Trading under similar circumstances.[li] Plaintiffs and putative class members were universally denied the resulting overtime compensation.[lii] Regarding Plaintiffs' "Grace Period" claims, the same expectations were placed on all FSA to be exactly on time and completely ready for work because of Defendant's strict attendance and punctuality policy.[liii] Heeding to Defendant's requirements, Plaintiffs and putative class members alike performed pre-shift activities to prepare for work before their scheduled shifts after clocking-in.[liv] They reviewed flight schedules, put on safety gear, and conferred with supervisors about the upcoming work day; for both Plaintiffs and putative class members, these activities were always unpaid.[lv] Furthermore, Plaintiffs and putative class members were similarly required to work past their scheduled shifts by Defendant.[lvi] They faced the same ineffective timekeeping and payroll policies and practices which led them to receive compensation for only some of their post-shift work.[lvii] Plaintiffs claims are typical for all of the foregoing reasons.

### 4. Adequacy is Satisfied as to the Class and Subclasses

Federal Rule of Civil Procedure 23(a)(4) involves the adequacy of the representative parties and their counsel. Courts ask the following questions when addressing the adequacy requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon* at 150 F.3d 1020 *citing Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiffs have both declared that they wish to serve as class representatives, will dutifully serve, and have no conflicts with putative class members concerning the issues at hand.[lviii] Plaintiffs seek remuneration for the same violations of law that each putative class member has suffered. Because of this shared interest, Plaintiffs will vigorously prosecute the instant action. Plaintiffs have willingly and effectively participated in this litigation, answering discovery and appearing for multiple days of deposition.

### a. Defendant Cannot Create a Potential Conflict By Asserting Their Desire to Continue a Practice that Violates the Law

Defendant suggests that Plaintiffs are inadequate representatives because they have a conflict of interest with current FSA who would like to continue Shift Trading. Defendant's contention assumes that if Plaintiffs are successful in this litigation, Shift Trades would necessarily end. This assumption is simply not true. Defendant would not be obligated to end Shift Trades if Plaintiffs succeed. Defendant may either allow Shift Trading under the dicates of the CBA or pay overtime compensation, as required by California law, when Shift Trades lead to overtime hours. This Court should not vindicate the validity of a conflict of interest when it is premised on Defendant's interest something illegal. If Defendant's argument is accepted, it would only serve to sustain Defendant's unlawful practice.

### b. Class Counsel Are Adequate

Likewise, counsel representing Plaintiffs have no conflicts of interest with other class members and are competent, seasoned wage and hour attorneys with class action litigation experience.[lix] Lead class counsel, Arlo Garcia Uriarte, has litigated multiple class action law suits and routinely fights for the rights of aggrieved wage and hour employees.[lx] Class counsel have invested numerous hours and significant resources to protect the interests of Plaintiffs and putative class members alike.[lxi] As evidenced by their efforts thus far, class counsel have shown that they will vigorously prosecute this action.[lxii]

## C. The REQUIREMENTS OF RULE 23(B)(3) ARE MET

### 1. Common Questions of Law and Fact Predominate

Rule 23(b)(3) requires predominance of common questions of law and fact over any questions affecting only individual members, but not exclusivity of common issues. *Bertulli v.*

1   *Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001); *See also Blackie v. Barrack*, 524

2   F.2d 891, 905 (9th Cir. 1975) (some individualized analysis does not preclude certification as long as

3   liability can be determined on a class-wide basis). "The Rule 23(b)(3) predominance inquiry tests

4   whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

5   *Amchen Prods., Inc. v Windsor*, 521 U.S. 591, 623 *(1997).* Central to the predominance inquiry is

6   whether the "adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix*

7   *Research Inst Inc.,* 235 F.3d 1188, 1189 (9th Cir. 2001) *quoting Valentino v. Carter-Wallace, Inc.,*

8   97 F.3d 1227, 1234 (9th Cir. 1996).

9          In *Otsuka*, "common questions of law and fact predominated over individual questions

10   because all of the employees' claims addressed policies and procedures that the employer

11   implement[s] across the board at each of the stores." *Otsuka v. Polo Ralph Lauren Corp.,251 F.R.D.*

12   *439.* Similarly, common questions of law and fact predominate here because Plaintiffs are

13   challenging Defendant's policies. *See also Weigele v. FedEx Ground Package System, Inc,* 267

14   F.R.D. 614, 619. (S.D. Cal. 2010)*; Bibo v. FedEx, 2009 WL 1068880 at * 10* ("relevant policies…

15   which offer a common question of law and fact" satisfy predominance).

16          **Individual Damage Calculations Do Not Destroy Predominance:** Here, the core claims of

17   overtime and unpaid hours can be adjudicated using Defendant's policies and practices, the

18   admissions of its timekeeping PMK (Janine Vail), and the governing law. Minimal individualized

19   inquiry is necessary except for individual calculations as to damages. The Ninth Circuit has made

20   clear that the need for individual damages determinations does not affect a plaintiffs ability to

21   demonstrate the predominance of common questions. *Blackie* 524 F.2d at 905*; See also Local Joint*

22   *Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir.

23   2001)

24          In *Leyva v. Medline Indus.,* 716 F.3d 510 (9th Cir. Cal. 2013), the Court held that the District

25   Court abused its discretion in concluding that (1) individual questions predominated over common

26   questions, and (2) class certification was not superior to other means of resolving the dispute because

27   the wrong legal standard was applied. The only individualized factor that the District Court

28   identified was the amount damages owed. If the putative class members proved the employer's

liability, damages would be calculated based on the lost wages of each employee. The District Court incorrectly held that class certification was not the superior method of adjudication because of the difficulty of managing the approximately 500 class members and determining the extent to which each putative class member lost wages, and, consequently, suffered damages. *Leyva* is similar to the instant case beceause the company used company-wide timekeeping practices that violated the law.

**Plaintiffs Propose A Class-Wide Method For Calculating Damages:** Plaintiffs have proposed a damages model.[8] Plaintiffs' timekeeping and forensics accounting expert has submitted his declaration which discusses the individual damages stemming from Defendant's common and detailed timekeeping and payroll records.[lxiii] Plaintiffs' forensic accountant  has determined the actual wages that should have been paid to FSA.[lxiv] Unpaid wages due to pre-shift activities have also been calculated because all clocked-in minutes of FSA are recorded by Defendant. FSA testimony regarding their pre-shift activities leads to a credible estimate of 15 minutes of compensable work performed before scheduled shifts.[lxv] Plaintiffs' forensic accountant has determined that a daily average of 11.13 minutes before scheduled shifts is unpaid by Defendant.[lxvi]

As to Plaintiffs' claim regarding post-shift work, all recorded minutes after scheduled shifts should be paid. FSA did not engage in any post-shift non-compensable time because these minutes amount to a continuation of their scheduled work. An analysis of the post-shift unpaid minutes shows that the average number of minutes worked by FSA after their shift is over equals 4.11 minutes.[lxvii] A common question is whether Defendant paid FSA for all hours worked before and after their scheduled shifts. Whether Defendant's use of an Exception Report captured all compensable time is another common question which can be answered on a class-wide basis.

**Class Action is the Superior Method of Adjudication:** Rule 23(b)(3) lists four (4) non-exclusive factors to aid in this analysis: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of

---

[8] *See* Breshears Dec. Ex. C and Ex. D.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION: Angeles v. US Airways 3:12-cv-05860 CRB

14

concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Here, there is no evidence of putative class member interest in the individual control of their controversies. Individual claims would largely rely on the same evidence: Defendant's employment policies and practices, timekeeping records, and payroll records. Defendant's liability can be established for all individual members based on the aforementioned common evidence. A class action is also superior because individual FSA would not have to bear significant legal costs that could minimize their potential recoveries. Further, there is no evidence of other litigations concerning the controversy brought by Plaintiffs. Class treatment is far superior to hundreds of smaller, individual claims: "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser,* 253 F.3d at 1190.

It is extremely desirable to concentrate the instant claims in this particular forum because it facilitates economies of time, effort, and expense. Additionally, uniformity of decision is promoted while ensuring procedural fairness and protecting against undesirable results. Any difficulties in managing this class action would be minimal. Defendant has provided detailed records evidencing the harms complained of. In order to analyze these harms, Plaintiffs have hired an accounting expert to determine what remains unpaid by Defendant. These calculations can be done individually so that class member recoveries are commensurate with the amount of work performed. For these reasons, a class action is the superior method of adjudication.

## VII.   CONCLUSION

Plaintiffs respectfully requests this Court certify the class and subclasses as set forth above, appoint them as class representatives and appoint Arlo Uriarte and The Liberation Law Group, P.C. as class counsel.

Dated: January 24, 2014                                     Respectfully Submitted,

LIBERATION LAW GROUP, P.C.

By:_____
              Arlo Uriarte

_____

# END NOTES

[i] *See generally* Plaintiffs' Third Amended Complaint ("TAC") attached as Exhibit 1 to Declaration of Arlo Garcia Uriarte (Uriarte Dec.).

[ii] Court's Order, February 19, 2013 (dkt. 23).

[iii] Uriarte Dec. ¶ 4; Declaration of Joseph Angeles (Angeles Dec.) ¶ 14-15; Declaration of Noe Lastimosa (Lastimosa Dec.) ¶ 9-10.

[iv] Uriarte Dec. ¶ 4; Declaration of Nick Aguilar (Aguilar Dec.) ¶ 8.

[v] Angeles Dec. ¶14-15; Lastimosa Dec. ¶ 9-10

[vi] Third Amended Complaint ("TAC") ¶ 51-55.

[vii] Feb. 19 Order (dkt. 23) 8:9-11.

[viii] IAM CBA Art. 5, p. 20-21, TWA CBA Section 5D.

[ix] *Id.*

[x] Janine Vail Deposition ("Vail Dep.") 46:3-7; 49:2-50:8; 57:18-19; 82:1-10; 83:19-23. Janine Vail is Defendant's rule 30(b)(6) designee on timekeeping.

[xi] Uriarte Dec. ¶ 5.

[xii] *Id.*

[xiii] IAM CBA Art. 5, p. 20-21, TWA CBA Section 5D.

[xiv] TAC ¶ 56-62.

[xv] Vail Dep. 50:15-25; 51:1-23; 52:1-23; Defendant's timekeeping and payroll data samples used by Vail in her deposition attached as Ex. 2 to Uriarte Dec.

[xvi] Angeles Dec. ¶ 19-22; Lastimosa Dec. ¶ 16-17, 21; Bozanich, Jason Dec. ¶ 5; Brown, Christopher Dec. ¶ 6; Cargile, Robert Dec. ¶ 5; Carmona, Jose Dec. ¶ 7; Chen, Wayne Dec. ¶ 4; Duval, Regan Dec. ¶ 6-7; Eckhart, Dennis Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 6-8; Harris, James Dec. ¶ 6, 8; Henson, Marvin Dec. ¶ 6; Hoeft, Henry Dec. ¶ 7-8; Hogg, Dennis Dec. ¶ 5; Kessee, Ralph Dec. ¶ 5-6; Knobloch, William Dec. ¶ 6; Kortz, Jay Dec. ¶ 5; Lent, Rick Dec. ¶ 5; Lozano, Pete Dec. ¶ 6; Martin, Alfred Dec. ¶ 5; Massey, Michelle Dec. ¶ 6, 8; Moore, Andre Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 5-7, 9; Quintero, Henry Dec. ¶ 5; Thereault, Ben Dec. ¶ 5; Watson, Wayne ¶ 5; Wilkes, Michael Dec. ¶ 5-6, 8.

[xvii] *Id.*

[xviii] TAC ¶ 63-66.

[xix] Attached as Exhibit 3 to Uriarte Dec.

[xx] TAC ¶ 74-106.

[xxi] TAC ¶ 12, 18; IAM CBA Art. 4, p. 11-12, TWA CBA Section 1B; *See generally* all FSA Declarations in support of Plaintiffs' motion for class certification, attached to Uriarte Dec. as Ex. 8-35; *See* Aguilar Dec. Ex. A for chart of declarants in support of Plaintiffs' motion.

[xxii] TAC ¶ 8-9.

[xxiii] IAM CBA Art. 4, p. 11-12, TWA CBA Section 1B.

[xxiv] TAC ¶ 8-9.

[xxv] IAM CBA Art. 5, p. 18-20, TWA CBA Section 5C.

[xxvi] IAM CBA Art. 5, p. 20-22, TWA CBA Section 5D.

[xxvii] TAC ¶ 20-24. Bozanich, Jason Dec. ¶ 4; Brown, Christopher Dec. ¶ 4; Cargile, Robert Dec. ¶ 4; Carmona, Jose Dec. ¶ 4; Chen, Wayne Dec. ¶ 3; Duval, Regan Dec. ¶ 4; Eckhart, Dennis Dec. ¶ 4; Frixone, Daniel Rivas Dec. ¶ 4; Harris, James Dec. ¶ 4; Henson, Marvin Dec. ¶ 4; Hoeft, Henry Dec. ¶ 4; Hogg, Dennis Dec. ¶ 4; Kessee, Ralph Dec. ¶ 4; Knobloch, William Dec. ¶ 4; Kortz, Jay Dec. ¶ 4; Lent, Rick Dec. ¶ 4; Lozano, Pete Dec. ¶ 4; Martin, Alfred Dec. ¶ 4; Massey, Michelle Dec. ¶ 4; Moore, Andre Dec. ¶ 4; Mora, Wendy Dec. ¶ 4; Pele, Natasha Dec. ¶ 4; Quintero, Henry Dec. ¶ 4; Thereault, Ben Dec. ¶ 4; Watson, Wayne ¶ 4; Wilkes, Michael Dec. ¶ 4.

[xxviii] TAC ¶ 25-27; IAM CBA Art. 5, p. 21, TWA CBA Section 5D; Vail Dep. 46:3-7; 49:2-50:8; 57:18-19; 82:1-10; 83:19-23.

[xxix] TAC ¶ 20; Brown, Christopher Dec. ¶ 1, 4, 8; Frixone, Daniel Rivas Dec. ¶ 1, 4; Hoeft, Henry Dec. ¶ 1, 4; Quintero, Henry Dec. ¶ 1, 4; Carmona, Jose Dec. ¶ 1, 4; Wilkes, Michael ¶ 1, 4; Eckhart, Dennis Dec. ¶ 1, 4; Lent, Rick ¶ 1, 4; Bozanich, Jason Dec. ¶ 1, 4.

[xxx] When compared to part-time FSA, full-time FSA receive more comprehensive medical, dental, and life insurance benefits; full-time FSA accrue sick leave days at a higher rate; full-time FSA accrue vacation days at a higher rate; and Defendant contributes to the pension plans of full-time FSA at a higher rate. *See* IAM CBA Art. 10, 12, 15, 22, 23 p. 55, 91-93, 95, 96, 114, 150, 153.

[xxxi] IAM CBA Art. 26, p. 104.

1

2

3

[xxxii] Angeles Dec. ¶16; Lastimosa Dec. ¶ 5; Brown, Christopher Dec. ¶ 8; Carmona, Jose Dec. ¶ 4; Daniel Rivas Dec. ¶ 4; Joseph Angeles Deposition (Angeles Depo.) 169:4-170:17; Noe Lastimosa Deposition (Lastimosa Depo.) 160:8-14.

4

5

6

[xxxiii] TAC ¶ 30-33; Angeles Dec. ¶ 19-27 and Lastimosa Dec. ¶ 14-21; Angeles Depo. 77:2-12; 89:8-14; 89:16-18; 89:20-21; 90:22-91:1; 93:1-3, 94:14-15; 212:16-22; 219:10-13; 228:11-17; Lastimosa Depo. 71:21-25; 72:1-17; 72:18-73:25; 174:25-176:19; ; 177:25-178:11; 178:25-179:7; 181:10-182:11; 182:18-22.

7

8

[xxxiv] Vail Dep. 55:24-25, 56:1-10.

9

10

11

12

13

[xxxv] Angeles Dec. ¶ 19-22; Lastimosa Dec. ¶ 16-17, 21; Bozanich, Jason Dec. ¶ 5; Brown, Christopher Dec. ¶ 6; Cargile, Robert Dec. ¶ 5; Carmona, Jose Dec. ¶ 7; Chen, Wayne Dec. ¶ 4; Duval, Regan Dec. ¶ 6-7; Eckhart, Dennis Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 6-8; Harris, James Dec. ¶ 6, 8; Henson, Marvin Dec. ¶ 6; Hoeft, Henry Dec. ¶ 7-8; Hogg, Dennis Dec. ¶ 5; Kessee, Ralph Dec. ¶ 5-6; Knobloch, William Dec. ¶ 6; Kortz, Jay Dec. ¶ 5; Lent, Rick Dec. ¶ 5; Lozano, Pete Dec. ¶ 6; Martin, Alfred Dec. ¶ 5; Massey, Michelle Dec. ¶ 6, 8; Moore, Andre Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 5-7, 9; Quintero, Henry Dec. ¶ 5; Thereault, Ben Dec. ¶ 5; Watson, Wayne ¶ 5; Wilkes, Michael Dec. ¶ 5-6, 8.

14

15

16

17

18

[xxxvi] Angeles Dec. ¶ 20-23; Lastimosa Dec. ¶ 14-21, 17-19; Employee Contact Report, Joseph Angeles, April 9, 2012 – attached as Exhibit A to Angeles Dec.; Bozanich, Jason Dec. ¶ 5; Carmona, Jose Dec. ¶ 7; Eckhart, Dennis Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 6-8; Harris, James Dec. ¶ 6, 8; Hoeft, Henry Dec. ¶ 8; Kessee, Ralph Dec. ¶ 6; Knobloch, William Dec. ¶ 6; Kortz, Jay Dec. ¶ 5; Lozano, Pete Dec. ¶ 6; Martin, Alfred Dec. ¶ 5; Massey, Michelle Dec. ¶ 6, 8; Moore, Andre Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 7; Quintero, Henry Dec. ¶ 5; Thereault, Ben Dec. ¶ 5; Watson, Wayne ¶ 5; Wilkes, Michael Dec. ¶ 5.

19

[xxxvii] *Id.*

20

21

22

23

[xxxviii] Angeles Dec. ¶ 25; Lastimosa Dec. ¶ 21; Bozanich, Jason Dec. ¶ 5; Brown, Christopher Dec. ¶ 6; Duval, Regan Dec. ¶ 6; Eckhart, Dennis Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 6-8; Henson, Marvin Dec. ¶ 6; Hoeft, Henry Dec. ¶ 7-9; Hogg, Dennis Dec. ¶ 5; Kessee, Ralph Dec. ¶ 5-6; Kortz, Jay Dec. ¶ 5; Lent, Rick Dec. ¶ 5; Lozano, Pete Dec. ¶ 6; Martin, Alfred Dec. ¶ 5; Massey, Michelle Dec. ¶ 5-9; Moore, Andre Dec. ¶ 6, 8; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 5-9; Quintero, Henry Dec. ¶ 5; Thereault, Ben Dec. ¶ 5; Watson, Wayne ¶ 5-6; Wilkes, Michael Dec. ¶ 6.

24

25

[xxxix] TAC ¶ 30-33; Angeles Dec. ¶ 10-12; Lastimosa Dec. ¶ 22-25.

26

27

28

[xl] Angeles Dec. ¶ 28; Lastimosa Dec. ¶ 22; Bozanich, Jason Dec. ¶ 6; Brown, Christopher Dec. ¶ 6-7; Cargile, Robert Dec. ¶ 6; Carmona, Jose Dec. ¶ 6, 8; Chen, Wayne Dec. ¶ 4; Duval, Regan Dec. ¶ 9-10; Eckhart, Dennis Dec. ¶ 7; Frixone, Daniel Rivas Dec. ¶ 7-8; Harris, James Dec. ¶ 7-8; Henson, Marvin Dec. ¶ 7; Hoeft, Henry Dec. ¶ 6-9; Hogg, Dennis Dec. ¶ 6-7; Kessee, Ralph Dec. ¶ 7; Knobloch, William Dec. ¶ 7; Kortz, Jay Dec. ¶ 6; Lent, Rick Dec. ¶ 6; Lozano, Pete Dec. ¶ 7;

Martin, Alfred Dec. ¶ 6-7; Massey, Michelle Dec. ¶ 7; Moore, Andre Dec. ¶ 7; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 8; Quintero, Henry Dec. ¶ 6; Thereault, Ben Dec. ¶ 5-6; Watson, Wayne ¶ 6 Wilkes, Michael Dec. ¶ 7-8.

[xli] Vail Dep. 50:15-25; 51:1-2; 52:1-23.

[xlii] Vail Dep. 51:17-25; 52:1-23.

[xliii] Angeles Dec. ¶ 29-30; Lastimosa Dec. ¶ 21, 24; Defendant's Opp. To Mot. For Leave to File Third Amended at 6:19-23. Bozanich, Jason Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 7-8; Harris, James Dec. ¶ 7-8; Hogg, Dennis Dec. ¶ 6; Knobloch, William Dec. ¶ 7; Kortz, Jay Dec. ¶ 6; Lent, Rick Dec. ¶ 6; Martin, Alfred Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Quintero, Henry Dec. ¶ 6; Thereault, Ben Dec. ¶ 5-6; Watson, Wayne ¶ 6; Wilkes, Michael Dec. ¶ 7-8; Breshears Dec. p. 7 ¶ 18, 19.

[xliv] Angeles Dec. ¶ 29-30; Lastimosa Dec. ¶ 21.

[xlv] Bozanich, Jason Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 7-8; Harris, James Dec. ¶ 7-8; Henson, Marvin Dec. ¶ 7-8; Hogg, Dennis Dec. ¶ 6; Knobloch, William Dec. ¶ 7; Kortz, Jay Dec. ¶ 6; Lent, Rick Dec. ¶ 6; Martin, Alfred Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Moore, Andre Dec. ¶ 7; Quintero, Henry Dec. ¶ 6; Thereault, Ben Dec. ¶ 5-6; Watson, Wayne ¶ 6; Wilkes, Michael Dec. ¶ 7-8.

[xlvi] Brown, Christopher Dec. ¶ 5-7; Cargile, Robert Dec. ¶ 6-7; Carmona, Jose Dec. ¶ 6, 8; Duval, Regan Dec. ¶ 6, 9-10; Eckhart, Dennis Dec. ¶ 5, 7; Frixone, Daniel Rivas Dec. ¶ 7-8; Hoeft, Henry Dec. ¶ 6-9; Kessee, Ralph Dec. ¶ 5, 8; Massey, Michelle Dec. ¶ 5; Moore, Andre Dec. ¶ 7; Pele, Natasha Dec. ¶ 6, 8.

[xlvii] Angeles Dec. ¶ 31; Lastimosa Dec. ¶ 25; Bozanich, Jason Dec. ¶ 9; Brown, Christopher Dec. ¶ 10; Cargile, Robert Dec. ¶ 9; Carmona, Jose Dec. ¶ 10; Eckhart, Dennis Dec. ¶ 10; Frixone, Daniel Rivas Dec. ¶ 10; Harris, James Dec. ¶ 10; Hoeft, Henry Dec. ¶ 12; Hogg, Dennis Dec. ¶ 8; Knobloch, William Dec. ¶ 9; Kortz, Jay Dec. ¶ 8; Lent, Rick Dec. ¶ 8; Lozano, Pete Dec. ¶ 9; Martin, Alfred Dec. ¶ 9; Massey, Michelle Dec. ¶ 10; Moore, Andre Dec. ¶ 9; Mora, Wendy Dec. ¶ 7; Quintero, Henry Dec. ¶ 8; Thereault, Ben Dec. ¶ 7. TAC ¶ 65.

[xlviii] Lastimosa Depo. 46:13-22; 47:9-48:15.

[xlix] Angeles Dec. ¶ 31; Lastimosa Dec. ¶ 25; Bozanich, Jason Dec. ¶ 9; Brown, Christopher Dec. ¶ 10; Cargile, Robert Dec. ¶ 9; Carmona, Jose Dec. ¶ 10; Eckhart, Dennis Dec. ¶ 10; Frixone, Daniel Rivas Dec. ¶ 10; Harris, James Dec. ¶ 10; Hoeft, Henry Dec. ¶ 12; Hogg, Dennis Dec. ¶ 8; Knobloch, William Dec. ¶ 9; Kortz, Jay Dec. ¶ 8; Lent, Rick Dec. ¶ 8; Lozano, Pete Dec. ¶ 9; Martin, Alfred Dec. ¶ 9; Massey, Michelle Dec. ¶ 10; Moore, Andre Dec. ¶ 9; Mora, Wendy Dec. ¶ 7; Quintero, Henry Dec. ¶ 8; Thereault, Ben Dec. ¶ 7.

[1] Uriarte Dec. ¶ 15.

[li] TAC ¶ 20-24; Angeles Dec. ¶ 16-17; Lastimosa Dec. ¶ 10-13 Bozanich, Jason Dec. ¶ 4; Brown, Christopher Dec. ¶ 4; Cargile, Robert Dec. ¶ 4; Carmona, Jose Dec. ¶ 4; Duval, Regan Dec. ¶ 4; Eckhart, Dennis Dec. ¶ 4; Frixone, Daniel Rivas Dec. ¶ 4; Harris, James Dec. ¶ 4; Henson, Marvin Dec. ¶ 4; Hoeft, Henry Dec. ¶ 4; Hogg, Dennis Dec. ¶ 4; Kessee, Ralph Dec. ¶ 4; Knobloch, William Dec. ¶ 4; Kortz, Jay Dec. ¶ 4; Lent, Rick Dec. ¶ 4; Lozano, Pete Dec. ¶ 4; Martin, Alfred Dec. ¶ 4; Massey, Michelle Dec. ¶ 4; Moore, Andre Dec. ¶ 4; Mora, Wendy Dec. ¶ 4; Pele, Natasha Dec. ¶ 4; Quintero, Henry Dec. ¶ 4; Thereault, Ben Dec. ¶ 4; Watson, Wayne ¶ 4; Wilkes, Michael Dec. ¶ 4.

[lii] *Id.*

[liii] Angeles Dec. ¶ 22-23; Lastimosa Dec. ¶ 18-21; Employee Contact Reports, attached to both Angeles Dec. and Lastimosa Dec.; Bozanich, Jason Dec. ¶ 5; Carmona, Jose Dec. ¶ 7; Eckhart, Dennis Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 6-8; Harris, James Dec. ¶ 6, 8; Hoeft, Henry Dec. ¶ 8; Kessee, Ralph Dec. ¶ 6; Knobloch, William Dec. ¶ 6; Kortz, Jay Dec. ¶ 5; Lozano, Pete Dec. ¶ 6; Martin, Alfred Dec. ¶ 5; Massey, Michelle Dec. ¶ 6, 8; Moore, Andre Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 7; Quintero, Henry Dec. ¶ 5; Thereault, Ben Dec. ¶ 5; Watson, Wayne ¶ 5; Wilkes, Michael Dec. ¶ 5.

[liv] *Id.*

[lv] *Id.*

[lvi] TAC ¶ 30-33; Angeles Dec. ¶ 28-29; Lastimosa Dec. ¶ 22-24; Bozanich, Jason Dec. ¶ 6; Brown, Christopher Dec. ¶ 6-7; Cargile, Robert Dec. ¶ 6; Carmona, Jose Dec. ¶ 6, 8; Duval, Regan Dec. ¶ 9-10; Eckhart, Dennis Dec. ¶ 7; Frixone, Daniel Rivas Dec. ¶ 7-8; Harris, James Dec. ¶ 7-8; Henson, Marvin Dec. ¶ 7; Hoeft, Henry Dec. ¶ 6-9; Hogg, Dennis Dec. ¶ 6-7; Kessee, Ralph Dec. ¶ 7; Knobloch, William Dec. ¶ 7; Kortz, Jay Dec. ¶ 6; Lent, Rick Dec. ¶ 6; Lozano, Pete Dec. ¶ 7; Martin, Alfred Dec. ¶ 6-7; Massey, Michelle Dec. ¶ 7; Moore, Andre Dec. ¶ 7; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 8; Quintero, Henry Dec. ¶ 6; Thereault, Ben Dec. ¶ 5-6; Watson, Wayne ¶ 6; Wilkes, Michael Dec. ¶ 7-8.

[lvii] Vail Dep. 50:15-25; 51:1-2; 52:1-23; 51:17-25; 52:1-23.

[lviii] Angeles Dec. ¶ 3-9; Lastimosa Dec. ¶ 4; Uriarte Dec. ¶ 23-26.

[lix] Uriarte Dec. ¶ 27-37.

[lx] Uriarte Dec. ¶ 29-36.

[lxi] Uriarte Dec. ¶ 38-42.

[lxii] *Id.*

[lxiii] *See generally* Breshears Dec. and attached Exhibits.

[lxiv] *Id.*

[lxv] Angeles Dec. ¶ 19-22; Lastimosa Dec. ¶ 16-17, 21; Bozanich, Jason Dec. ¶ 5; Brown, Christopher Dec. ¶ 6; Cargile, Robert Dec. ¶ 5; Carmona, Jose Dec. ¶ 7; Chen, Wayne Dec. ¶ 4; Duval, Regan Dec. ¶ 6-7; Eckhart, Dennis Dec. ¶ 6; Frixone, Daniel Rivas Dec. ¶ 6-8; Harris, James Dec. ¶ 6, 8; Henson, Marvin Dec. ¶ 6; Hoeft, Henry Dec. ¶ 7-8; Hogg, Dennis Dec. ¶ 5; Kessee, Ralph Dec. ¶ 5-6; Knobloch, William Dec. ¶ 6; Kortz, Jay Dec. ¶ 5; Lent, Rick Dec. ¶ 5; Lozano, Pete Dec. ¶ 6; Martin, Alfred Dec. ¶ 5; Massey, Michelle Dec. ¶ 6, 8; Moore, Andre Dec. ¶ 6; Mora, Wendy Dec. ¶ 5; Pele, Natasha Dec. ¶ 5-7, 9; Quintero, Henry Dec. ¶ 5; Thereault, Ben Dec. ¶ 5; Watson, Wayne ¶ 5; Wilkes, Michael Dec. ¶ 5-6, 8.

[lxvi] Breshears Dec. p. 7 ¶ 19.

[lxvii] *Id.*