1  ROBERT A. SIEGEL (S.B. #64604)
   rsiegel@omm.com
2  O'MELVENY & MYERS LLP
   400 South Hope Street, 18th Floor
3  Los Angeles, CA  90071-2899
   Telephone:  213-430-6000
4  Facsimile:  213-430-6407

5  ADAM P. KOHSWEENEY (S.B. #229983)
   akohsweeney@omm.com
6  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
7  San Francisco, CA  94111-3823
   Telephone:  415-984-8912
8  Facsimile:  415-984-8701

9  Attorneys for Defendant
   US Airways, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSEPH TIMBANG ANGELES, NOE LASTIMOSA, on behalf of themselves and on behalf of others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>US AIRWAYS, INC., and DOES 1 through 50,<br>Defendants. | Case No. 3:12-cv-05860 CRB<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANT US AIRWAYS, INC. FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(c)**<br><br>Hearing Date: March 21, 2014<br>Time: 10:00 A.M.<br>Courtroom: 6<br>Judge: Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ........................................................................................ iv

ARGUMENT ....................................................................................................................... 1

    I.    THE MOTION FOR JUDGMENT ON THE PLEADINGS IS PROPER ............. 1

    II.   WAGE ORDER 9-2001'S RLA EXEMPTION AND VOLUNTARY MODIFICATION EXEMPTION EXEMPT US AIRWAYS FROM SECTION 510 OF THE CALIFORNIA LABOR CODE AND, ACCORDINGLY, THE FIRST CAUSE OF ACTION FAILS AS A MATTER OF LAW ........................................................................................ 2

        A.   Plaintiffs Argument Regarding a "Conflict" Between Section 514 and the RLA Exemption Is Based on a Misreading of *Collins* ................... 3

        B.   Plaintiffs' Argument Concerning the Voluntary Modification Exemption Is Internally Inconsistent, Fails to Comport with the Rules of Statutory Interpretation, and Fails to Distinguish This Case from *Collins* ........................................................................................ 9

    III.  PLAINTIFFS' DERIVATIVE CLAIMS FAIL TO THE EXTENT THEY ARE PREMISED ON THE DEFICIENT FIRST CAUSE OF ACTION ............. 10

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bearden v. U.S. Borax, Inc.*,
   138 Cal. App. 4th 429 (2006) ................................................................................................ 3

*Blackwell v. SkyWest Airlines, Inc.*,
   245 F.R.D. 453 (S.D. Cal. 2007) ............................................................................................ 3

*Boise Cascade Corp. v. U.S. EPA*,
   942 F.2d 1427 (9th Cir. 2001) ................................................................................................ 8

*Brinker Rest. Corp. v. Superior Court*,
   53 Cal. 4th 1004 (2012) ................................................................................................. 5, 6, 9

*City of L.A. v. Santa Monica BayKeeper*,
   254 F.3d 882 (9th Cir. 2001) .................................................................................................. 2

*Collins v. Overnite Transp. Co.*,
   105 Cal. App. 4th 171 (2003) ........................................................................................ passim

*Echavez v. Abercrombie & Fitch Co.*,
   No. CV 11-9754 GAP (PJWx), 2013 WL 7162011 (C.D. Cal. Aug. 13, 2013) ..................... 8

*Freedom Newspapers, Inc. v. Orange Cnty. Emps. Ret. Sys.*,
   6 Cal. 4th 821 (1993) ............................................................................................................. 9

*Lanzarin v. Superior Court*,
   188 Cal. App. 4th 1560 (2010) .............................................................................................. 3

*Reynolds v. Bement*,
   36 Cal. 4th 1075 (2005) ......................................................................................................... 9

*Vranish v. Exxon Mobil Corp.*,
   223 Cal. App. 4th 103 (2014) ................................................................................................ 2

**STATUTES**

Cal. Lab. Code § 510 ................................................................................................................ passim

Cal. Lab. Code § 514 ................................................................................................................ passim

Cal. Lab. Code § 515 ................................................................................................................ passim

**OTHER AUTHORITIES**

AB60, 1999 Cal. ALS 134 ........................................................................................................... 4, 5

SB1208, 2001 Cal. ALS 148 (2001) ............................................................................................... 5

**REGULATIONS**

Cal. Wage Order 3-2001 ........................................................................................................ 8

Cal. Wage Order 9-2001 ................................................................................................. passim

Cal. Wage Order 9-76 ........................................................................................................... 7

Cal. Wage Order 9-80 ........................................................................................................... 7

Cal. Wage Order 9-90 ........................................................................................................... 7

Cal. Wage Order 9-98 ........................................................................................................... 7

Cal. Wage Order 9-2000 ....................................................................................................... 7

Cal. Wage Order 14-2001 ..................................................................................................... 8

**SUMMARY OF ARGUMENT**

US Airways demonstrated in its Motion for Judgment on the Pleadings (dkt. 57) (hereinafter, "Motion") that Wage Order 9-2001 § 1(E) (the "RLA Exemption") exempts US Airways from California's statutory overtime requirements with regard to California-based Fleet Service Agents ("FSAs") because their employment is governed by a collective bargaining agreement ("CBA") entered into pursuant to the Railway Labor Act ("RLA"). Similarly, the Motion also demonstrated that Wage Order 9-2001 § 3(N) (the "Voluntary Modification Exemption") provides an additional exemption from most overtime requirements that would otherwise be triggered as a result of voluntary shift trading. Each of these two separate – though, in this case, overlapping – provisions of California Wage Order 9-2001 is sufficient as a matter of law to defeat Plaintiffs Joseph Timbang Angeles' and Noe Lastimosa's ("Plaintiffs'") First Cause of Action for allegedly unpaid overtime. Nothing in Plaintiffs' Response to US Airways' Motion (dkt. 72) (hereinafter, "Opposition") offers a convincing argument to the contrary.

As an initial matter, Plaintiffs argue that the Motion seeks reconsideration of an issue that has already been decided. This is untrue – this Court has only decided that the RLA Exemption applies to claims based on Wage Order 9-2001, and that the collective bargaining agreement at issue here does not meet the requirements of California Labor Code § 514. US Airways has never argued, and this Court has never decided, whether the RLA Exemption applies to claims under the California Labor Code. Further, this Court has never considered the Voluntary Modification Exemption at all. In sum, the present Motion applies the RLA Exemption and the Voluntary Modification Exemption to Plaintiffs' statutory overtime claims for the first time, and accordingly this Motion is proper.

The crux of Plaintiffs' Opposition consists of an argument, devoid of supporting authority, that the RLA Exemption cannot provide an exemption to California's statutory overtime requirements because the RLA Exemption "conflicts" with the general CBA exemption contained in California Labor Code § 514 ("Section 514"). Plaintiffs never explain how these two exemptions "conflict," because they cannot. The RLA Exemption exempts "employees who have entered into a [CBA] under and in accordance with the [RLA]," while Section 514 exempts

"employee[s] covered by a valid [CBA] if the agreement" meets certain criteria. There is no facial conflict between the two exemptions, they have separate requirements, and each is supported by a separate set of policy considerations. Moreover, Plaintiffs' entire "conflict" argument is based on an argument that, at best, misinterprets relevant case law and manufactures an interaction between the Labor Code and the wage orders that simply does not exist. Plaintiffs never acknowledge that courts are hesitant to find a conflict and will only do so when two provisions are "irreconcilable" and "clearly repugnant." *See Collins v. Overnite Transp. Co.*, 105 Cal. App. 4th 171, 178-79 (2003). Plaintiffs' conclusory arguments fall far short of this standard – especially in light of the fact that these two exemptions have coexisted for decades. As demonstrated in the Motion, California Labor Code § 515(b) ("Section 515(b)") authorized the IWC to retain overtime exemptions contained in valid 1997 wage orders, and it chose to do so with regard to both the RLA Exemption and the Voluntary Modification Exemption. Pursuant to Section 515(b) and the holding in *Collins*, these overtime exemptions apply to statutory wage claims (a fact that Plaintiffs do not dispute in their Opposition).

Notwithstanding Plaintiffs' argument that the RLA Exemption "conflicts" with Section 514 and is therefore unenforceable, Plaintiffs also argue that the RLA Exemption should be read to exempt US Airways from Wage Order 9-2001 § 3 and thereby to preclude US Airways from availing itself of the Voluntary Modification Exemption contained in § 3(N). According to Plaintiffs, the fact that the IWC enacted two independent and complimentary exemptions that preserved long-standing shift trade practices in the airline industry should be read as evidence of the IWC's intent to preclude US Airways from benefiting from either. This argument has no foundation in logic or law and should be rejected.

Lastly, Plaintiffs admit that – to the extent this Court applies either the RLA Exemption or the Voluntary Modification Exemption – their Third, Fifth, Sixth, and Seventh Causes of Action must fail to the extent they are predicated on the deficient First Cause of Action. Their argument that their Third, Fifth, Sixth, and Seventh Causes of Action may survive to the extent they are predicated on other causes of action is irrelevant – the Motion only applies to these causes of action to the extent they are predicated on the First Cause of Action.

For the foregoing reasons, and the reasons that follow, US Airways is entitled to judgment on the pleadings as to the entire First Cause of Action and as to the Third, Fifth, Sixth, and Seventh Causes of Action insofar as they are premised on the deficient First Cause of Action.

# ARGUMENT[1]

## I. THE MOTION FOR JUDGMENT ON THE PLEADINGS IS PROPER

Plaintiffs argue that "[US Airways] has already raised the RLA exemption as a 'separate and independent reason[ ]' for dismissal of Plaintiffs overtime claims, because it exempts [US Airways] from the requirements of section 510." (Opp. at 2.) Plaintiffs have completely misrepresented US Airways' prior motions and this Court's prior orders, which only address the applicability of the RLA Exemption to the overtime requirements of Wage Order 9-2001 not the applicability of the RLA Exemption to statutory overtime requirements. Accordingly, the Motion presents distinct grounds for dismissal of Plaintiffs' statutory overtime claims, which US Airways has not previously asserted and this Court has never adjudicated.

US Airways' initial Motion to Dismiss asserted *only* that the RLA Exemption provided an exemption from Wage Order 9. (*See* Mot. to Dismiss [dkt. 6] at 1, 5-6.) Specifically, US Airways argued that "while Plaintiffs attempt to base their overtime claims on Wage Order 9, Section 1(E) of Wage Order 9 states that *its overtime provisions* do not 'cover those employees who have entered into a collective bargaining agreement under and in accordance with the provisions of the' RLA," and thus "Plaintiffs and the putative class cannot state a claim for overtime *pursuant to Wage Order 9*." (Mot. to Dismiss at 1 (emphasis added); *see also id.* at 5-6 ("Wage Order 9 Exempts US Airways from *Its* Overtime Provisions. . . . By its express terms, therefore, the *Wage Order does not apply* to US Airways with respect to overtime . . . .") (emphasis added).) Prior to the present motion, the Court has not had the opportunity to rule on whether the RLA Exemption exempts US Airways from the requirements of California Labor Code § 510 ("Section 510"). Indeed, this Court's February 19 Order held only that "the overtime provisions of IWC Wage Order 9-2001 do not apply to Defendant" and did not address whether the RLA Exemption applied to the California Labor Code. (Order Granting in Part and Denying in Part Mot. to Dismiss, Feb. 19, 2013 [dkt. 23] ("Feb. 19 Order") at 8.) Further, this Court has never considered the Voluntary Modification Exemption in any manner at all.

---

[1] To avoid repetition, US Airways hereby incorporates by reference the Statement of Facts and Procedural History from its Motion for Judgment on the Pleadings. (Dkt. 57 at 1-2.)

Plaintiffs also misrepresent this Court's February 19 Order regarding Section 510. It is true that this Court held that Plaintiffs' CBA did not meet the requirements of the overtime exemption provided in Section 514. However, nothing in this Court's prior rulings held that US Airways could not otherwise be exempt from Section 510. (*See* Feb. 19 Order at 9 ("Because the CBAs provide premium wage rates for only some overtime hours worked, the Court finds that **Labor Code section 514** does not exempt Defendant from compliance with **Labor Code section 510**.") (emphasis added).)[2] Accordingly, the Motion does not seek reconsideration or otherwise implicate any prior decision of this Court.

## II. WAGE ORDER 9-2001'S RLA EXEMPTION AND VOLUNTARY MODIFICATION EXEMPTION EXEMPT US AIRWAYS FROM SECTION 510 OF THE CALIFORNIA LABOR CODE AND, ACCORDINGLY, THE FIRST CAUSE OF ACTION FAILS AS A MATTER OF LAW

Plaintiffs' First Cause of Action fails as a matter of law because two separate and independently sufficient provisions of California Wage Order 9-2001 exempt US Airways from the overtime obligations of the California Labor Code. The RLA Exemption exempts employers from paying overtime if the employer has entered into a CBA pursuant to the RLA with a union representing its employees. There is no dispute that the putative class is employed pursuant to such a CBA. (*See* Feb. 19 Order at 8; *see also* Opp.) The Voluntary Modification Exemption, on the other hand, exempts employers from paying overtime when an airline employee works over forty hours but not more than sixty hours in a workweek pursuant to a temporary modification in the employee's normal work schedule, such as a voluntary shift trade.[3] Accordingly, the central

---

[2] US Airways does not concede that this holding was proper. In fact, a California Court of Appeal decision recently agreed with the same argument that US Airways presented to this Court – that Section 510 is completely inapplicable to individuals employed pursuant to a CBA, even if the CBA's definition of overtime differs from the definition in Section 510. *See Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103 (2014); *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient.") (internal quotation marks omitted).

[3] Plaintiffs state in a footnote that the "work arrangement" described by the Voluntary Modification Exemption "has not been adopted by the [CBAs] in this case." (Opp. at 13 n.9.) Whether such an arrangement has been adopted by a CBA is irrelevant, given that the Voluntary Modification Exemption does not depend on the existence of a CBA. Plaintiffs cannot reasonably dispute that their overtime claim is premised on overtime hours worked pursuant to voluntary, employee-initiated shift trades, which fall within the plain text of the Voluntary Modification

-2-

US AIRWAYS' REPLY ISO MOT. FOR
JUDGMENT ON THE PLEADINGS
CASE NO. 3:12-CV-05860 CRB

question is whether Wage Order 9-2001's RLA Exemption and Voluntary Modification Exemption exempt US Airways from the overtime requirements of Section 510. Plaintiffs' Opposition fails to address or dispute the fact that the only court to have considered the issue held that wage order exemptions will apply to statutory wage claims so long as the requirements of Section 515(b) are met. *Collins v. Overnite Transp. Co.*, 105 Cal. App. 4th 171 (2003). Plaintiffs also fail to dispute that both the RLA Exemption and Voluntary Modification Exemption meet Section 515(b)'s requirements – *i.e.*, they existed in a valid wage order in effect in 1997 and have been retained since that time.[4] Accordingly, *Collins* is dispositive, and both the RLA Exemption and Voluntary Modification Exemption exempt US Airways from the overtime requirements of § 510. Plaintiffs' Opposition does not demonstrate anything to the contrary.

### A. Plaintiffs Argument Regarding a "Conflict" Between Section 514 and the RLA Exemption Is Based on a Misreading of *Collins*

Plaintiffs' central argument, which appears to be based on a misreading of dicta in *Collins*, is that the RLA Exemption cannot exempt US Airways from Section 510 because the RLA Exemption allegedly conflicts with Section 514. This argument should be summarily rejected because it is clear from the face of the exemptions that there is no conflict. The RLA Exemption exempts "employees who have entered into a [CBA] under and in accordance with the [RLA]," while Section 514 exempts "employee[s] covered by a valid [CBA] if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

---

Exemption. (*See* Wage Order 9-2001 § 3(N)); *see also Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 463 (S.D. Cal. 2007) ("Under [the Voluntary Modification Exemption], a plaintiff is not entitled to overtime compensation if she worked above 40 but not more than 60 hours in a week as a result of voluntary shift trades.").

[4] Plaintiffs' brief instead focuses on dicta from *Collins* and numerous citations to generic language from non-employment cases regarding statutory interpretation. (Opp. at 6-7, 9-12.) Similarly, cases such as *Bearden v. U.S. Borax, Inc.*, 138 Cal. App. 4th 429 (2006), which cites *Collins* with favor several times, and *Lazarin v. Superior Court*, 188 Cal. App. 4th 1560 (2010), are irrelevant to the matter at hand. Both cases involve wage order exemptions to meal period and rest break requirements, not overtime requirements, and accordingly neither deals with Section 515(b). Section 515(b) and *Collins*, on the other hand, explicitly address the interaction between the Labor Code and wage orders in the context of ***overtime***.

Accordingly, the two exemptions do not conflict, and in any particular case one, both, or neither may apply. Regardless, Plaintiffs' entire argument is based on a fundamental misreading of *Collins* and should also be rejected on that basis.

### 1. Plaintiffs' "Conflict" Argument Is Based on a Misreading of *Collins*

The entirety of Plaintiffs' argument against the RLA Exemption assumes that this Court cannot enforce a wage order exemption if it "conflicts" with Section 514. This argument is based on a misreading of *Collins* and a misunderstanding of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 ("AB60") – both of which recognized the ongoing applicability of all wage order exemptions that existed in 1997.

Prior to 1998, the wage orders required employers to pay both daily and weekly overtime but also provided certain exemptions to those requirements. In 1998, however, the IWC removed the daily overtime requirement from certain of its 1998 wage orders. *See Collins*, 105 Cal. App. 4th at 176. The Legislature responded by enacting AB60 to reinstate and solidify the daily overtime requirement, but in doing so it preserved the existing wage order exemptions. *See* AB60, 1999 Cal. ALS 134. As the DLSE stated, "[i]t is very important to understand . . . [that] AB60 as a whole applies to all California workers except for those who are expressly exempted by the bill itself, ***or those who were expressly exempted from a pre-1998 wage order***." (DLSE Mem. re: Understanding AB60: An In Depth Look at the Provisions of the "Eight Hour Day Restoration and Workplace Flexibility Act of 1999" (Dec. 23, 1999) (emphasis added).)[5] Consistent with this approach, AB60 reinstated the valid wage orders in effect in 1997, codified a general CBA exemption at Section 514,[6] and enacted Section 515(b) to "express[ ] a legislative intent to leave undisturbed the exemptions from 'provisions regulating hours of work . . . contained in any valid wage order in effect in 1997." *Collins*, 105 Cal. App. 4th at 180; AB60 §§ 8, 9, & 21.[7] The RLA Exemption was one of the exemptions that was "left undisturbed" pursuant

---

[5] Available at http://www.dir.ca.gov/dlse/AB60update.htm.

[6] As discussed *infra* at page 7, Section 514's concept of a general CBA exemption was actually taken from the wage orders, where it had existed since 1976.

[7] Additionally, with the 2001 amendments to Section 514, the Legislature specifically noted, "This bill would declare that the provisions summarized above are declaratory of existing law and

-4-

US AIRWAYS' REPLY ISO MOT. FOR
JUDGMENT ON THE PLEADINGS
CASE NO. 3:12-CV-05860 CRB

to Section 515(b).

Plaintiffs' suggestion that AB60 somehow stripped the wage orders of their authority, or imposed an additional test based on "conflict" is disingenuous. *Cf. Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012) (noting, post-AB60, that the wage orders are "presumptively valid" regulations that must be given "independent effect" separate and apart from other statutory enactments). In addition, Plaintiffs have misrepresented the purpose of § 515(b) by twisting its introductory language and dicta in *Collins*. Section 515(b) states: "***Except as otherwise provided in this division***, the commission may review, retain, or eliminate an exemption from provisions regulating hours of work that was contained in a valid wage order in effect in 1997." (Emphasis added.) *Collins* explained that the purpose of this introductory language was to solidify the exemptions codified in the Labor Code and the purpose of the rest of the sentence was to authorize the IWC to retain other, non-codified exemptions. *Collins*, 105 Cal. App. 4th at 178-79 ("It is reasonable to suppose that, while recognizing the IWC's power to 'review, retain, or eliminate any exemption,' the Legislature intended to make clear that this power extended to nonstatutory exemptions in wage orders and did not affect statutory exemptions in the division."). In other words, the IWC could not "review, retain, or eliminate" the exemptions contained in AB60 (including Section 514), but could "review, retain, or eliminate" any of its own exemptions, to the extent they existed in a 1997 wage order. As discussed at length in the Motion, the IWC chose to "retain" the RLA Exemption.

Accordingly, because the IWC had clear authority to retain the RLA Exemption pursuant to Section 515(b) – which was enacted in conjunction with Section 514 – "[i]t should not be inferred that the Legislature intended to repeal the exemption without an express declaration of intent." *Collins*, 105 Cal. App. 4th at 179. Here, Plaintiffs can offer no such "express declaration of intent," because there was none. The Legislature intended for the IWC to have the authority to retain exemptions, such as the RLA Exemption and the Voluntary Modification Exemption, and the IWC did just that.

---

shall not be deemed to alter, modify, or otherwise affect any wage order of the Industrial Welfare Commission." SB1208, 2001 Cal. ALS 148 (2001).

## 2. The RLA Exemption Does Not Conflict with Section 514

Courts will "affirm, to the extent possible, the integrity of both the [Labor Code] and the IWC regulations as part of a single scheme of regulations," and, even in cases of potential conflict, courts will give effect and meaning to the words of the Labor Code and wage orders unless the conflict is "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have ***concurrent*** operation." *Collins*, 105 Cal. App. 4th at 179-80 (emphasis added) (internal quotations omitted). Here, even if Plaintiffs are correct that the Court must inquire into a potential conflict between Section 514 and the RLA Exemption, there is no conflict between them – let alone an "irreconcilable, clearly repugnant" conflict. One need only read the RLA Exemption and Section 514 to reach this conclusion. Moreover, Section 514 and the RLA Exemption both serve necessary purposes within California's "complementary and occasionally overlapping sources of authority," by providing separate, though occasionally overlapping, exemptions to California's overtime requirements. *See Brinker Rest. Corp.*, 53 Cal. 4th at 1026.

The RLA Exemption exempts a certain subset of employees who have entered into CBAs under and in accordance with the RLA (which, by definition, would only encompass airline and railroad employers). (Request for Judicial Notice In Support of Mot. [dkt. 58] (hereinafter "RJN"), Ex. A, Wage Order 9-2001 § 1(E).) Section 514 exempts another subset of employees covered by valid CBAs that provide for the wages, hours of work, and working conditions of employees, and provide premium wage rates for all overtime hours worked and a regular hourly rate of pay for employees not less than 30% more than the state minimum wage. Cal. Lab. Code § 514. This exemption may apply to any employer – not just airlines and railroads. Both exemptions reference employees covered by CBAs, but that is not sufficient to create a conflict between these exemptions. These exemptions operate in completely different spheres – *i.e.*, some employees may be covered by Section 514-compliant CBAs that have nothing to do with the RLA, and other employees may be covered by RLA-compliant CBAs that do not fall under the umbrella of Section 514. Whether one, the other, or both exemptions apply, those employees and

their employers are covered by valid exemptions to California's overtime requirements.[8]

The fact that the RLA Exemption does not conflict with Section 514 is reinforced by the fact that these exemptions have coexisted since 1976. In addition to the RLA Exemption (RJN, Ex. B, Wage Order 9-76 § 1(D)), Wage Order 9-76 contained a general CBA exemption that is the historical precursor to the Section 514 exemption. Specifically, the 1976 version provides a general overtime exemption "where the employer is obligated to provide premium wage rates for overtime work and to regulate the number of hours worked pursuant to a written collective bargaining agreement." (RJN, Ex. B, Wage Order 9-76 § 3(G).) The IWC took care to acknowledge and justify both the general CBA exemption (RJN Ex. G at 8),[9] and the specific RLA Exemption in its 1976 Statement of Findings (RJN Ex. G at 6).[10] Thus, the IWC contemplated a concurrent need for ***both*** a general CBA exemption ***and*** an RLA Exemption and has retained both exemptions in every wage order since 1976. (*See* RJN Ex. A, Wage Order 9-2001 §§ 1(E), 3(H); Ex. B, Wage Order 9-76 §§ 1(D), 3(G); Ex. C, Wage Order 9-80 §§ 1(D), 3(G); Ex. D, Wage Order 9-90 §§ 1(D), 3(F); Ex. E, Wage Order 9-98 §§ 1(D), 3(D); Ex. F, Wage Order 9-2000 §§ 1(D), 3(G)(1).) Accordingly, these exemptions do not conflict – to the contrary, both exemptions serve separate purposes, were deemed necessary by the IWC, and have coexisted for approximately thirty-eight years.

Plaintiffs attempt to manufacture a conflict between the exemptions by mentioning at least

---

[8] Plaintiffs incorrectly suggest that application of the RLA Exemption would somehow evade this Court's prior ruling regarding Section 514. This is simply untrue – the RLA Exemption and Section 514 are separate exemptions, either or both of which may apply to California's statutory overtime requirements.

[9] The statement is as follows:

> Based on the adequacy of collective bargaining, the [IWC] has included in Orders 1, 4, 6, 7, 9, 11, and 12 a provision directing that the premium pay and hour provisions of collective bargaining agreements shall prevail over the provisions of basic I.W.C. regulations on Hours and Days of Work. This served to ameliorate the impact on industries in which non-conforming work schedules were balanced by contract provisions improving the welfare of employees in other ways.

[10] The statement is as follows:

> Certain employees were exempted in the Applicability section from provisions of Order 9-76, Transportation. The Commission found that it would be difficult to enforce standards for employees crossing state lines and that the exempted employees were better protected by their [CBAs] pursuant to the [RLA].

thirteen times that Section 514 creates a "baseline" of requirements that "collective bargaining agreement[s] must meet in order to qualify for an exemption from section 510's overtime requirements." (Opp. at 7.) Plaintiffs, however, provide no authority for the theory that Section 514 sets such a baseline. Plaintiffs also ignore the fact that there are other exemptions in the wage orders that could offer exemptions to employees covered by CBAs, even when those CBAs do not meet the requirements of Section 514.[11] Plaintiffs' unsupported theory would result in the invalidation of these other exemptions as well – a result that is contrary to established California law. *See Collins*, 105 Cal. App. 4th at 179-80 (rejecting employees' interpretation of the Labor Code that "would call into question an array of other unspecified provisions in IWC wage orders"). Indeed, Plaintiffs' argument could be extended to suggest that Section 514's "baseline" means that ***any*** exemptions that fail to incorporate the requirements of Section 514 would also fail to provide an exemption to Section 510, thereby rendering Section 515(b) entirely meaningless. Such an interpretation would violate the basic canon that a statute should be interpreted in a way that gives effect to all of its provisions. *See Echavez v. Abercrombie & Fitch Co.*, No. CV 11-9754 GAP (PJWx), 2013 WL 7162011, at *6 (C.D. Cal. Aug. 13, 2013) ("As is commonly held, 'we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'") (quoting *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir. 2001)). Consistent with this approach, *Collins* found that the motor carrier exemption – despite the fact that it does not incorporate the "baseline" requirements of Section

---

[11] Plaintiffs essentially argue that regardless of what other exemptions might apply to that employee, if an employee is covered by the CBA and that CBA does not meet the requirements of Section 514, all other exemptions are foreclosed. For example, Wage Order 14-2001 contains an exemption pertaining to employees covered by CBAs that would similarly be destroyed by Plaintiffs reading of Section 514. Wage Order 14-2001 § 3(E) (Agricultural Occupations) ("This section shall not apply to any employee covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work and a cash wage rate for such employee of not less than one dollar ($1.00) per hour more than the minimum wage."). Numerous other exemptions across the wage orders would be lost as well, thereby frustrating the Legislature's intent in passing Section 515(b). *See, e.g.*, Wage Order 3-2001 § 1(B) ("Except as provided in Sections 1, 2, 4, 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.").

1   514 – met the requirements of Section 515(b) and, therefore, should be extended to Section 510
2   of the Labor Code.

### B. Plaintiffs' Argument Concerning the Voluntary Modification Exemption Is Internally Inconsistent, Fails to Comport with the Rules of Statutory Interpretation, and Fails to Distinguish This Case from *Collins*

As discussed in the Motion, the RLA Exemption as applied to US Airways FSAs is broader than the Voluntary Modification Exemption. Thus, to the extent that this Court finds that the former applies, it need not address the latter. That said, the core of Plaintiffs' argument with regard to the Voluntary Modification Exemption is that US Airways cannot avail itself of this exemption because the RLA Exemption – which Plaintiffs contend is otherwise invalid – nonetheless precludes US Airways from relying on any portion of Wage Order 9 § 3 (where the Voluntary Modification Exemption is located). (Opp. at 13-14.) Plaintiffs thus invite this Court to read the RLA Exemption – which, on its face, is designed to *relieve* airline employers from regulation – in a one-sided manner that would instead *impose* regulation on US Airways by depriving it of the benefit of either applicable exemption in Wage Order 9. Plaintiffs' suggested reading is illogical, unsupported by any authority, and contrary to general principles of statutory construction.[12]

Plaintiffs also argue, without support, that this Court should refuse to apply the Voluntary Modification Exemption because the IWC did not "intend" for the Voluntary Modification Exemption to apply to RLA employers who have entered into collective bargaining agreements. (Opp. at 13-14 n.10.) As with Plaintiffs' first argument, this reading defies logic. The obvious intent of the IWC was to exempt employers from California's overtime requirements when those employers meet the requirements of the RLA Exemption, the Voluntary Exemption, or both exemptions. *See Brinker Rest. Corp.*, 53 Cal. 4th at 1028 (beginning with the text when interpreting a wage order because "[t]he best indicator of [the IWC's] intent is the language of the [wage order] provision itself") (quoting *Reynolds v. Bement*, 36 Cal. 4th 1075, 1086 (2005)); *Freedom Newspapers, Inc. v. Orange Cnty. Emps. Ret. Sys.*, 6 Cal. 4th 821, 826 (1993) ("When

---

[12] Plaintiffs appear to concede that – laying aside the impact (if any) of the RLA Exemption – the Voluntary Modification Exemption provides an exemption to Labor Code § 510.

interpreting a statute our primary task is to determine the Legislature's intent. In doing so we first turn to the statutory language, since the words the Legislature chose are the best indicators of intent."). The IWC saw fit to provide airline employers with a broad overtime exemption to the extent the employer was party to an RLA CBA – accordingly, the IWC promulgated the RLA Exemption. However, the IWC apparently wanted airline employers that were not party to a CBA to still be allowed a limited overtime exemption to the extent the overtime entitlement was triggered by a voluntary shift trade policy. Hence, the Voluntary Modification Exemption was created to provide ***additional*** coverage and protection to airline employers in the context of the shift trading that is prevalent in the industry.

In *Collins*, the court recognized that its duty was to harmonize the wage orders and the Labor Code, and thus that it was obligated "to affirm, to the extent possible, the integrity of ***both*** [AB60] and the IWC regulations as part of a single scheme of regulation." *Collins*, 105 Cal. App. 4th at 180 & n.4 (emphasis added). To hold otherwise would create "separate and conflicting spheres of regulation" that make little sense. *Id.* Here, the IWC intended – through both the RLA Exemption and the Voluntary Modification Exemption – to preserve the industry's ability to allow employees to shift trade without creating overtime liability for the employer. Similarly, the Legislature enacted Section 515(b) to allow the IWC to preserve these exemptions. Plaintiffs' desired interpretation would frustrate this intent. Accordingly, as argued in US Airways' Motion and above, both the RLA Exemption and the Voluntary Modification Exemption offer independent and complementary grounds upon which to exempt US Airways from Section 510.

### III. PLAINTIFFS' DERIVATIVE CLAIMS FAIL TO THE EXTENT THEY ARE PREMISED ON THE DEFICIENT FIRST CAUSE OF ACTION

In its Motion, US Airways moved for judgment on the pleadings as to Plaintiffs' Third, Fifth, Sixth, and Seventh Causes of Action ***insofar as they rely upon the deficient First Cause of Action***, and Plaintiffs concede that their "other causes of action fail as a matter of law *only insofar* as they 'rely on the causes of action this Court deems deficient.'" (Opp. at 14.) The remainder of Plaintiffs' argument, which contends that these claims "remain viable" to the extent they are premised on other unidentified "viable" causes of action, is irrelevant to the Motion.

That said, US Airways notes that outside of the First Cause of Action, Plaintiffs' derivative Third, Fifth, Sixth, and Seventh Causes of Action can only be maintained to the extent they are premised on the Second Cause of Action and only to the extent the Second Cause of Action is a viable cause of action.

## CONCLUSION

For the foregoing reasons, US Airways respectfully requests that this Court dismiss Plaintiffs' First Cause of Action (overtime claim). US Airways further requests that the Third Cause of Action (wage statement claim), Fifth Cause of Action (waiting time penalties claim), Sixth Cause of Action (UCL claim), and Seventh Cause of Action (PAGA claim) be dismissed to the extent they are predicated on the deficient First Cause of Action.

Dated: March 7, 2014

O'MELVENY & MYERS LLP
ROBERT A. SIEGEL
ADAM P. KOHSWEENEY

By: /s/ Adam P. KohSweeney
Adam P. KohSweeney
Attorneys for Defendant US Airways, Inc.