United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH TIMBANG ANGELES, NOE LASTIMOSA, on behalf of themselves and on behlaf of others similarly situated, and the general public,<br><br>Plaintiffs<br><br>v.<br><br>US AIRWAYS, INC., and DOES 1 through 50,<br><br>Defendants. | No. C 12-05860 CRB<br><br>**ORDER GRANTING MOTION TO DECERTIFY GRACE PERIOD SUBCLASSES** |

Defendant US Airways moves to decertify Plaintiff Fleet Service Agents' ("FSAs") Grace Period subclasses. And for good reason. Post-certification discovery has revealed that these subclasses fall well short of the bar for commonality under Federal Rule of Civil Procedure Rule 23(a), let alone that for predominance under Rule 23(b)(3).[1]

## I.  BACKGROUND

### A.  Factual Background

FSAs are airport support staff who, among other things, handle bags, mail, and cargo, as well as waive in, push back, and clean aircraft. Howard Decl. (dkt. 108–1) Ex. 3 (Henson Depo.) at 14:20–15:3, Ex. 6 (Kortz Depo.) at 35:10–19, Ex. 5 (Massey Depo.) at 25:24–26:2, 37:22–38:11, Ex. 4 (Roberts Depo.) at 12:15–22, Ex. 2 (Sausa Depo.) at 25:8–26:1. Under

---

[1] The Court thus does not reach whether they satisfy Rule 23(b)(3)'s superiority requirement.

their collective bargaining agreement with US Airways, FSAs obtain their work schedules through a bidding process that occurs at least three times per year. Decl. Howard Ex. 11 (Soto Decl.) ¶ 5, Ex. 8 (Crowl Depo.) at 21:13–22:6, 32:22–33:16, 34:21–35:9, Ex. 7 (Kullar Depo.) at 39:13–25. Each station establishes its own work schedule or "bid," which corresponds to the station's anticipated flight schedule for the bid period. See KohSweeney Decl. (dkt. 106–1) Ex. 1 (Harbinson Decl.) ¶ 6.

FSAs work as part of a team and may be assigned one of several tasks such as cleaning lavatories, loading or unloading bags, and pushing back aircraft. See Howard Decl. Ex. 5 (Massey Depo.) at 38:19–21, Ex. 8 (Crowl Depo.) at 42:4–1, 48:16–22. Each team has a Fleet Service Lead Agent ("Lead"). Decl. Howard Ex. 7 (Kullar Depo.) at 29:8–14, Ex. 8 (Crowl Depo.) at 42:1–11. The Leads are part of the same bargaining unit and typically assign FSAs their tasks. KohSweeney Decl. Ex. 1 at 1A Art. 4 § D; Howard Decl. Ex. 6 (Kortz Depo.) at 27:8–22, Ex. 7 (Kullar Depo.) at 29:8–14, Ex. 8 (Crowl Depo.) at 42:1–4, 42:12–20, 45:20–46:4.

Managers oversee all FSAs, including Leads, and often work in offices tucked away from where FSAs perform their duties. Howard Decl. Ex. 6 (Kortz Depo.) at 30:7–20, Ex. 7 (Kullar Depo.) at 15:17–16:19, 27:22–28:9, Ex. 1 (Brown Depo.) at 91:13–16. There is not always a manager on duty. Howard Decl. Ex. 6 (Kortz Depo.) at 30:7–20, Ex. 7 (Kullar Depo.) at 15:17–16:19, 27:22–28:9, Ex. 1 (Brown Depo.) at 91:13–16.

In 2008, US Airways implemented timekeeping software called "Workbrain." Howard Decl. Ex. 11 (Soto Decl.) ¶ 7. FSAs clock in and out electronically using the software, which tracks their time and pay. Howard Decl. Ex. 9 (Vail Depo.) at 25:9–17, 38:5–39:23. Each FSA's schedule is programed into Workbrain for each bid period so that if an FSA is clocked-in during their scheduled time, Workbrain automatically logs that period as paid time. Howard Decl. Ex. 11 (Soto Decl.) ¶ 8. Conversely, when an FSA clocks in before or remains clocked-in after their scheduled time, Workbrain logs this time as unpaid

2

1 time.[2]  See Howard Decl. Ex. 11 (Soto Decl.) ¶ 8, Ex. 9 (Vail Depo.) at 50:15–52:9,
2 55:24–56:12.  Many FSAs clock in before their scheduled shift or remain clocked-in after
3 their shift has ended; Workbrain automatically logs this time as unpaid, regardless of whether
4 they are working or engaging in personal activities.  Howard Decl. Ex. 1 (Brown Depo.) at
5 91:17–20, Ex. 2 (Sausa Depo.) at 110:16–18, 112:5–13, Ex. 3 (Henson Depo.) at 62:8–63:25.
6 The FSAs allege that they were not paid for work performed during these Grace Periods.

### B.     Procedural History

The FSAs added the "Grace Period" claim to their Third Amended Complaint.  See TAC (dkt. 52).  The FSA plaintiffs then moved for class certification, which the Court granted.  See Order Granting Mot. to Cert. (dkt. 75).  Although class certification was a "close question" at the time, the Court held that "enough [had] been alleged" to warrant discovery but noted that it would later review class certification "depending on what the evidence is."  H'rg Tr. (dkt. 78) at 2:16–3:3.  In light of the post-certification discovery, US Airways moves to decertify subclasses number 2 and 3—the "Grace Period" subclasses.

#### 1.     The Grace Period Subclasses

Class members are made up of all former US Airways FSAs "who worked as Fleet Service Agents in the State of California at any time on or after June 22, 2008, until the date of certification and who are members of one or more of Plaintiffs' subclasses."  Opp'n to Mot. to Decertify at 3–4 n.1 (dkt. 109).  Subclass 2 is made up of FSAs who, while clocked-in, engaged in pre-shift work and are owed compensation for hours worked.  Mot. for Class Certification at 1–2 (dkt. 64).  Subclass 3 is made up of FSAs who, while clocked-in, engaged in post-shift work and are owed compensation for hours worked.  Id. Together, these are the Grace Period subclasses.  Id.

---

[2]  Workbrain is programed to only allow an FSA to clock in either 55 minutes before their scheduled shift or clock out within 30 minutes after their shift ends.  Howard Decl. Ex. 11 (Soto Decl.) ¶ 8, Ex. 9 (Vail Depo.) at 50:15–52:9, 55:24–56:12.

3

### 2. Post-Certification Discovery

Post-certification discovery has revealed that each California station has station-specific policies and practices for tracking Grace Period work for which an FSA should have been paid. Howard Decl. Ex. 11 (Soto Decl.) ¶¶ 8–9, Ex. 10 (Vail Decl.) ¶ 6, Ex. 9 (Vail Depo.) at 18:12–19:22, 51:6–51:23. Most stations require FSAs to record their additional work time on paper forms, but the policies and procedures for recording additional work time vary across stations. Howard Decl. Ex. 10 (Vail Decl.) ¶ 6. Leads usually verify paper forms but sometimes complete the forms themselves on behalf of FSAs. Howard Decl. Ex. 10 (Vail Decl.) ¶ 6, Ex. 3 (Henson Depo.) at 89:7–22, Ex. 26 (Townsend Decl.) ¶ 9, Ex. 19 (Mendiola Decl.) ¶ 11. At some stations, FSAs can verbally report additional work time to a Lead or manager. Howard Decl. Ex. 6 (Kortz Depo.) at 96:12–97:2, Ex. 5 (Massey Depo.) at 60:5–8, 71:3–12.

After an FSA reports additional time worked, an administrator or manager uses Workbrain to convert unpaid time outside of an FSA's schedule into paid time. Howard Decl. Ex. 10 (Vail Depo.) ¶ 6. According to US Airways, "every [FSA] who was deposed after class certification was well aware of the practice at their particular station for reporting any time worked outside of a scheduled shift, and used the practice on a regular basis." Mot. to Decertify at 3 (citing Howard Decl. Ex. 3 (Henson Depo.) at 89:7–91:19, 74:7–75:15, Ex. 1 (Brown Depo.) at 43:2–45:19, 95:2–96:11, Ex. 6 (Kortz Depo.) at 37:11–40:16, 89:2–11, 90:1–91:8, Ex. 2 (Sausa Depo.) at 51:18–53:12, Ex. 5 (Massey Depo.) at 60:10–67:8, 114:22–115:4, Ex. 4 (Roberts Depo.) at 33:2–35:9).

In addition, US Airways rarely requires FSAs to clock in early. See Howard Decl. Ex. 1 (Brown Depo) 91:13–20, Ex. 2 (Sausa Depo.) at 110:16–18, 112:5–13, Ex. 3 (Henson Depo.) at 62:8–63:25, Ex. 8 (Crowl Depo.) at 71:2–72:16. Instead, FSAs often clock in early

4

for personal reasons.[3] See id. Ex. 1 (Brown Depo) 91:13–20, Ex. 2 (Sausa Depo.) at 110:16–18, 112:5–13, Ex. 3 (Henson Depo.) at 62:8–63:25. Glen Brown is an FSA who works in Ontario and testified that he arrives to work early due to his own personal preferences and that no US Airways manger is on-duty at the beginning of his shift. Id. at 91:13–20. He and Michelle Massey also testified that they and other FSAs use this time for personal activities, like picking up tickets for personal travel. Id. at 39:4–7, Ex. 5 (Massey Depo.) at 121:7–123:22. Monica Sausa, an FSA based out of San Jose, testified that she clocks in early to beat traffic.[4] Id. Ex. 2 (Sausa Depo.) at 110:16–18, 112:5–13. She also testified that FSAs have personal conversations, watch television, or spend time on their cell phones during the Grace Periods; Sausa in fact frequently uses collects empty soda cans from airplane garbage cans to recycle for money. See id. at 70:9–72:25, 118:1–119:8, 104:10–15. Marvin Henson, a Lead at San Francisco International Airport, testified that he arrives early because the employee shuttle bus typically drops him off before his shift starts, and that should an FSA perform work early, he would ensure that their time was recorded and paid. Id. Ex. 3 (Henson Depo.) at 62:8–63:25. Defense counsel informed the Court at the hearing that an FSA in San Diego occasionally grills on the tarmac. In short, FSAs are not always—or perhaps not even often—engaged in work-related tasks during the Grace Periods.

And when FSAs request pay for work performed before or after their scheduled shifts, managers rarely scrutinize such requests. See Howard Decl. Ex. 7 (Kullar Depo.) at 49:5–22,

---

[3] Managers generally try to ensure a buffer between when an FSA starts their shift and when a plane is scheduled to arrive, and between when a plane departs and when an FSA ends their shift. Howard Decl. Ex. 11 (Soto Decl.) ¶ 6. They do this to ensure that FSAs do not have to work before their scheduled start times or after their scheduled end times. See Howard Decl. Ex. 11 (Soto Decl.) ¶ 6.

[4] The FSA plaintiffs assert that Monica Sausa testified that she did not receive training as to what activities constitute compensable Grace Period work but was trained to arrive early to do preparatory work. Opp'n to Mot. to Decertify at 5–6 (citing Ex. 2 (Sausa Depo.) at 34:18–36:4, 114:1–5). The FSAs mischaracterize her testimony. Sausa testified that FSAs need to be at their stations ten minutes before a flight, not before their shifts start. Sausa Depo. at 114:4–5. And although there may be airplanes on the ground when they begin their shifts, FSAs are not assigned to those airplanes. Id. at 105:20–2.

51:4–24, Ex. 8 (Crowl Depo. 89:9–23), Ex. 1 (Brown Depo.) at 95:2–25, Ex. 4 (Roberts Depo.) at 42:5–15, Ex. 3 (Henson Depo.) at 131:8–16, Ex. 6 (Kortz Depo.) at 63:1–65:12, Ex. 5 (Massey Depo.) at 57:10–14. Sausa testified that she can complete a "Time Adjustment Slip" to report additional time and will be paid for it. Id. Ex. 2 (Sausa Depo.) at 111:1–112:4. Soniya Kullar, an SFO manager, testified that she approves payment for any and all time recorded, even for only one minute and sometimes where a Lead has not verified the time reported. Id. Ex. 7 (Kullar Depo.) at 49:5–22; 51:4–24. She said, "we don't question it. We just pay it." Id. at 51:23–24. Christina Crowl, a manager at Los Angeles International Airport (LAX), could recount only one occasion during her six years of employment with US Airways where she declined to approve additional work time reported by an FSA. Id. Ex. 8 (Crowl Depo.) at 89:9–23; 131:8–24. Marvin Henson, an SFO Lead, testified that he signs off all additional time worked by FSAs and that SFO Leads have a common practice of rounding up additional work time, which may actually result in overpayment to FSAs.[5] Id. Ex. 3 (Henson Depo.) at 111:2–112:16, 118:7–119:3.

## II. LEGAL STANDARD

A federal court's order to grant class certification is subject to later modification. See Fed. R. Civ. Pro. 23(c)(1)(C); Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147 (1982). The party seeking decertification bears the burden of demonstrating that the elements of Rule 23 have not been established. Weigele v. FedEx Ground Package Sys., 267 F.R.D. 614, 617 (S.D. Cal. 2010). "Certification is proper only if the trial court is satisfied, after a rigorous

---

[5] Furthermore, the deposition testimony of class members does not support their declarations. Deposed class members submitted declarations stating that they believed they had performed work outside of their scheduled shifts without pay. See Uriate Decl. Ex. 1. But when deposed, none could recall a single instance in which they reported additional work but were not paid for it. Howard Decl. Ex. 4 (Roberts Depo.) at 42:5–15, Ex. 3 (Henson Depo.) at 131:8–16, Ex. 6 (Kortz Depo.) at 63:1–65:12, Ex. 5 (Massey Depo.) at 57:10–14. US Airways has also produced over 69,000 pages of paper forms from California stations that reflect the reporting and recording of time worked by FSAs during the Grace Periods. Howard Decl. ¶ 3. They confirm "that grace periods were converted to paid time on 23,963 occasions from June 22, 2008 to May 10, 2013, which amounts to an average of 93.6 conversions per calendar week across all California stations." Howard Decl. Ex. 28 (Czechowski Decl.) ¶¶ 10–11.

analysis," that the prerequisites of Rule 23 have been met. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350–51 (2011) (internal quotation marks omitted). This rigorous analysis will frequently "entail some overlap with the merits of the plaintiff's underlying claim," because determining whether the class's certification requirements are met "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 351 (citing Falcon, 457 U.S. at 160) (internal quotation marks omitted).

## III. DISCUSSION

Federal Rule of Civil Procedure 23(a)(2) requires "questions of law or fact common to the class," which means that there must be some "common contention . . . that it is capable of classwide resolution" such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 564 U.S. at 350. After discovery, it is now clear that this case comes nowhere close to that bar. There is no evidence that US Airways had a common policy requiring FSAs to report to work early or perform work before and after their shifts. Instead, the record demonstrates that employees by and large made personal choices about how early to show up before their shifts and how late to leave afterwards. And it demonstrates that US Airways had mechanisms in place for FSAs to report unpaid work, with specifics varying from station to station.

What is more, FSAs routinely engaged in personal activities during their Grace Periods. For example, some were working, some were watching TV, some were chatting, some were on their phones (perhaps Snapchatting), and one may have been grilling. There is no way for common evidence to determine who was working, how long they were working, whether they reported working, and whether they were not paid for working. The FSAs thus have it backwards when they maintain that "(1) whether Class Members sometimes work during Grace Periods; (2) if so, whether this work sometimes goes unreported; (3) whether some Grace Period work remains unpaid by Defendant; and (4) whether the consequences of Defendants' chosen policies lead it to routinely violate relevant wage and hour laws" present common questions capable of classwide resolution. Opp'n to Mot. to Decertify at 7. To the

7

contrary, (1), (2), and (3) are the very individualized questions that make it impossible for the Court to conclude that common questions—even if they existed here—could possibly predominate as required by Rule 23(b)(3).[6]  And (4), of course, cannot be determined without answering those individualized questions.

This case is thus the opposite of Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036 (2016).  There, employees at a meat-processing plant sued to recover for unpaid time they spent donning and doffing protective gear before and after their shifts.  Id. at 1042.  No one disputed that the employees were doing anything other than donning and doffing during that time.  See id. at 1044–46.  The dispute instead hinged on whether the class could rely on representative evidence to prove how long it took to don and doff.  Id. at 1047.  Because individual employees suing individually could have relied on such evidence, the Supreme Court held that the class could too.  Id.  But again, here employees were donning, doffing, chatting, reading, napping, watching TV, and maybe even grilling during the Grace Periods—who knows what else.  Representative evidence would not fly for individual FSAs, and it will not fly for a class of them.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant US Airways's motion to decertify the Grace Period subclasses.

**IT IS SO ORDERED.**

Dated: February 13, 2017

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[6] Different reporting mechanisms at different stations pose still more individualized questions.